CHARLES ELLIS, Appellee, v. ALFRED OLIPHANT, Appellant.

**Animals: DOGS: RIGHT TO KILL: STATUTE.** One may lawfully kill
.1   a dog only when caught in the act of worrying or killing sheep or
     other domestic animals, or attempting to bite a person; so that
     trapping and killing the dog of another suspected of killing sheep,
     but not caught in the act, was not within the protection of the
     statute.

**Same: EVIDENCE OF VALUE.** Witnesses who knew the habits, traits and
2    character of a dog are competent to testify to its value, although
     there was no actual market value for dogs in that vicinity.

**Pleadings:**  MOTION TO STRIKE.  Ordinarily a motion to strike is not the proper method of attacking the substance of a pleading, as its legal sufficiency cannot be tested in that manner.

**Same:**  TIME OF FILING PLEADINGS.  The court in its discretion may permit the filing of a pleading after the expiration of the statutory period.

**Animals:**  KILLING OF DOG:  INSTRUCTION.  In this action for killing a dog in the field where previously several sheep had been killed by dogs, a requested instruction that if the dog in question was one of those engaged in killing the sheep, the jury should find for defendant, was erroneous and was properly refused.

**Same:**  RECOVERY FOR STOCK KILLED BY DOGS:  ELECTION OF REMEDIES.  One who presents his claim to the board of supervisors for the loss of sheep killed by dogs, and accepts the allowance made by the board from the domestic animal fund, is precluded thereby from recovering any further sum from the person or persons whose dogs did the killing.

**Same:**  EVIDENCE.  A mere scintilla of evidence in support of an issue is not sufficient to carry it to the jury.  In the instant case the evidence was insufficient to require submission of a claim for the difference between the amount allowed by the supervisors for sheep killed by dogs and their actual value, even if it was recoverable against the owner of one of the dogs.

*Appeal from Linn District Court.*—HON. F. O. ELLISON, Judge.


TUESDAY, MAY 13, 1913.


ACTION at law, to recover damages for the wrongful killing of plaintiff's dog.  Defendant admitted the killing of the dog, but pleaded justification therefor and also filed a counterclaim for sheep killed and injured by the dog.  Plaintiff in reply denied the allegations of the counterclaim, and also pleaded an election by plaintiff to recover from the county the damages done his sheep.  On the issues joined the case was tried to a jury, resulting in a verdict and judgment for

the plaintiff, in the sum of $85, and defendant appeals.—
*Affirmed.*

*Leonard & Johnson,* for appellant.

*Voris & Haas,* for appellee.

DEEMER, J.—Plaintiff is a farmer living in Linn county,
Iowa, and defendant is also a farmer and sheep raiser, living
about a mile south and west of plaintiff's house. Defendant
had another farm about three-fourths of a mile northwest
from plaintiff's farm, which was occupied by a tenant, and
upon which defendant kept some sheep. During the early
morning of January 13, 1911, defendant was awakened by
telephone, and informed that some dogs were after his sheep.
Arming himself with two guns he started and on his way met
his tenant, and the two went to the farm where the sheep
were kept, and found several sheep dead and some injured.
The dogs had departed, going in a northeasterly direction and
witnesses saw a number of dogs that morning northeast of
defendant's farm. These dogs were not identified, save that
one witness said they were all dark-colored. Defendant
attempted to identify the bark or "yip" of one of the dogs
as one belonging to plaintiff, but this identification was incom-
plete and unsatisfactory. On the day the sheep were killed
defendant dragged a carcass of one of the sheep to a ditch
in the pasture, where the sheep had been kept, and surrounded
it with several traps, and on the second day thereafter plain-
tiff's collie dog, which was light in color and claimed to be
of great value, was caught in one of the traps and thereafter
killed by defendant in order to end its misery. It is not
claimed that the dog was in the act of chasing, worrying, or
injuring sheep at the time he was caught, but it is insisted
that his presence there was an indication that he had been
one of the group of dogs which did the original damage.
Plaintiff learned in some way that defendant had set out

traps, and he kept his dog up nights after hearing of the trap setting; but, having let him out in the daytime, the dog was enticed by the bait—so it is claimed—to go to the dead sheep and to get caught in the trap. On February 3, 1911, defendant filed a claim with the board of supervisors for the sheep which had been killed and injured, amounting to $60, and upon this he was allowed the sum of $36. This amount was accepted by him, and he has since retained it. There was testimony, tending to show that plaintiff's dog was a very valuable one, highly trained, and greatly efficient about the farm; some of the witnesses testifying that he was worth at least $200. Such proceedings were had during the trial as to eliminate defendant's claim for damages done his sheep, and the rulings whereby this counterclaim was eliminated are complained of. The trial court instructed, in effect, that defendant had no right, under the circumstances shown, to trap and shoot the dog, and the case was submitted to the jury for it to find the value of the dog and to return a verdict for plaintiff in the amount so found.

I. The trial court instructed that, as the dog was not in the act of worrying or killing sheep, the defendant had no right to trap him or to kill him after being trapped, and in this there was no error. One may not lawfully

1. ANIMALS: dogs: right to kill: statute.

kill the dog of another, except he be caught in the act of worrying, maiming, or killing sheep, lambs, or domestic animals, or attempting to bite some person. Code Supplement, section 2340; *Marshall v. Blackshire,* 44 Iowa, 475.

II. There seemed to be no actual market value for dogs in Linn county, Iowa; but plaintiff and others who knew the habits, traits, and character of the dog in question were per-

2. SAME: evidence of value.

mitted, over defendant's objections, to testify as to his actual value. In this there was no error. *Anson v. Dwight,* 18 Iowa, 241; *Bowers v. Horen,* 93 Mich. 420 (53 N. W. 535, 17 L. R. A. 733, 32 Am. St. Rep. 513); *Hodges v. Causey,* 77 Miss. 353 (26 South. 945, 48 L.

R. A. 95, 78 Am. St. Rep. 525); *Gere v. Insurance Co.,* 67 Iowa, 272; *Lanning v. Railway Co.,* 68 Iowa, 502; *Houghtaling v. Railway Co.,* 117 Iowa, 540.

III.   The claim that defendant, having elected to make his claim for damages done his sheep against the county, was barred of any right of recovery against the plaintiff was introduced into the case by an amendment to plaintiff's reply. This defendant moved to strike because filed too late and for other reasons. In so far as the motion attacked the substance of the pleading it was properly overruled, for the legal sufficiency of a pleading cannot, as a rule, be attacked by motion.

**3.  PLEADINGS: motion to strike.**

Although the reply was not filed in due season, under the Code, still it was within the discretion of the trial court to permit the same to be filed; and there is no showing of any abuse of that discretion. *Livingston v. Heck,* 122 Iowa, 74; *Williams Shoe Co. v. Gotzian,* 130 Iowa, 710; *Walker v. Pumphrey,* 82 Iowa, 487; *Irwin v. Yeager,* 74 Iowa, 174.

**4.  SAME: time of filing pleadings.**

IV.   The trial court instructed the jury not to allow anything on defendant's counterclaim, and this is argued as error. In this connection defendant's counsel asked the following instruction: "You are instructed if you find from all the evidence that the plaintiff's dog was one of the dogs that took part in the injuring and killing of the sheep of the defendant, on the night of the 13th of January last, then your verdict should be for the defendant, and you should so find." It is manifest that the instruction asked should not have been given, for it is clearly erroneous. The reason why the trial court took the counterclaim away from the jury is not stated. It may have been because of plaintiff's claim that defendant had elected to get his compensation from the county, or because there was not sufficient testimony to justify a finding that plaintiff's dog, or dogs, had anything to do with the injury to the sheep.

**5.  ANIMALS: killing of dog: instruction.**

Code Supplement, section 458-c, as amended by Acts 33d General Assembly, chapter 32, reads as follows:

Any person damaged by the killing or injury of any domestic animal or fowl by dog, dogs or wolves may present to the board of supervisors of the county in which such killing or injury occurred, a detailed statement and account of such killing or injury, stating the amount of damage claimed therefor and verified by affidavits by two or more disinterested persons not related to the claimant; such claim to be filed with the county auditor not later than ten (10) days from the time such killing or injury occurred or was known to the owner or his agent. Claims filed as herein provided shall be heard by the board of supervisors at the first regular session after the filing thereof or at such time as the board of supervisors may determine upon. No claim shall be allowed where it is shown that the injury and damage complained of was caused by a dog or dogs owned or controlled by the claimant. The board shall hear and determine said claims as soon as practical after they are filed, and shall allow the same or such portion thereof as they may deem just, and shall find and enter of record the value of each animal killed or the amount of damage done thereto, and shall authorize the auditor to issue warrants for not exceeding ninety per cent (90) of the amount of damages thus found, the same to be paid by the county treasurer out of the domestic animal fund, and if disallowed they shall so enter it upon their record.

6. SAME: recovery for stock killed by dogs: election of remedies.

The domestic animal fund is created by a general dog tax, made to meet claims for damages to domestic animals, etc. This law is not cumulative in character, but creates a special fund to meet particular claims for damages, and although but 90 per cent of the damages are to be paid, it is said that if one elects to rely upon these special provisions, he must be held to have waived any other remedy. Defendant, however, insists that he had the right to resort to this fund and also to recover the balance of his damages from the person, or persons, owning the dog. Acting upon this assump-

tion, he gave plaintiff credit for the sum of $36, being the amount received from the county. His claim against the county was for $60, and his prayer for damages in his counterclaim was for $144.50. In this connection plaintiff says that whatever claim defendant may have had now belongs to the county, because, having paid the debt, it is entitled to be subrogated to any remedy defendant may have had against the plaintiff. No attention need be paid to this issue, for if defendant's claim has been paid, or if he is concluded by his election, the case, so far as the counterclaim is concerned, is at an end. There is no subrogation in favor of the county, except, perhaps, to an extent necessary to protect it, nor in any event, unless it has paid defendant's claim in full; and, if it has done that, defendant has no further remedy. Nothing more need be said of the claim of subrogation.

In filing his claim with the county board, defendant included all his then demands for damages, and there is nothing to show that they have since been augmented. He knew that he could not have the full amount of his claim, and he also knew that if he elected to sue the owner of the dog and had judgment against him, he could not recover from the county. The domestic animal fund was contributed by the owners of all dogs, and could be resorted to whether the injured party knew the owners of the dogs or not. If in doubt about the ownership of the dogs, or of his ability to prove that ownership, or to recover full compensation for his injuries, he had before him this simple remedy of filing his claims for damages. The board took up his claim and, as we understand it, allowed defendant $36, in effect finding the actual damages suffered by him to be $40. Defendant now says that his damages were $144.50, and that the finding of the board of supervisors was erroneous, and that all required of him now is that he give plaintiff credit for the amount he received. This proposition does not seem to be sound in principle or supported by authority.

In *Metz v. Soule*, 40 Iowa 236, a convict in the Iowa penitentiary, while engaged by contractors in doing some work in the institution, was injured through the negligence of the contractors. He presented a claim for damages to the Iowa Legislature, asking for relief, and the General Assembly, by special act, appropriated to him the sum of $150 per annum, payable monthly. Thereafter, and while receiving compensation from the state, he sued the contractors for the damages sustained by him, and recovered damages for the sum of $4,250. On appeal from the judgment, this court said, among other things: "Having once sued and recovered of the state, all that he could claim of the defendants would be that they were jointly liable for the injury; and, having accepted voluntary satisfaction from the state, that is all that he can claim now. In either case, having been satisfied once, the claim is at an end. The fact that the amount which the state allowed is small is of no consequence. The plaintiff was under no compulsion to accept it. He accepted it voluntarily, and must take the benefit with all its accompanying burdens. It is claimed, however, that there is nothing in the terms of the act for the relief of Joseph Metz, providing that it shall be taken as an accord and satisfaction, or that its enactment was in discharge of any liability for personal injuries. It is claimed that 'it must be held to be a mere act of charity, having no other legal consequences than would follow a pecuniary gift from any other sympathetic hand.' The plaintiff presented his petition, claiming that the state had done him an injury, and asking redress. This was followed by a statute for his relief. It would be unreasonable to conclude that the act was passed out of mere charity, without any recognition that the injury was one which the state of right ought to redress. . . ." See, also, *Fairchild v. Rich*, 68 Vt. 202 (34 Atl. 692); *Tenney v. Lenz*, 16 Wis. 566.

Aside from this, however, there was not, in our opinion, sufficient testimony to take the case to the jury upon the

theory that any of the damages were done by any dog, or dogs, belonging to or under the control of the plaintiff. At least there was but a mere *scintilla*, and this is not now regarded as sufficient to take a case to a jury. The decisions upon this proposition are too numerous to require a citation thereof.

7. SAME: evidence.

V.   There is no merit in the claim that the court did not properly state the issues to the jury, and no prejudicial error in the other rulings complained of.

Finding no error, the judgment must be, and it is, *Affirmed*.