## ABBOTT *v.* BROWN, UNITED STATES MARSHAL FOR SOUTHERN DISTRICT OF FLORIDA.

### APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF FLORIDA.

No. 611. Argued April 13, 1916.—Decided June 12, 1916.

A rule of the District Court requiring motions for new trials to be made within four days after entry of the verdict is a mere regulation of practice, a breach of which is only an error of procedure, not affecting the jurisdiction of the court.

After reviewing the statutes relating to the terms of the District Courts of Florida and the provisions of the Judicial Code and the Rules of Court relating thereto and to the granting of new trials, *held*, that:

Such statutory provisions are designed to render the District

Courts readily accessible to applicants for justice in all branches of the jurisdiction; and, while they require those courts to be always open only as courts of admiralty and of equity, they permit special terms to be held at any time for the transaction of any kind of business.

General Rule No 1, of the District Court for the Southern District of Florida, providing for day to day adjournments during the absence of the presiding judge, should be liberally construed so as to keep the court open from the beginning of one statutory term to the beginning of the next, *Harlan* v. *McGourin*, 218 U. S. 442; and an adjournment made pursuant to that rule does not bring the term to an end, nor is an order for a new trial made after such an adjournment, and before the beginning of the next term, beyond the jurisdictional power of the judge.

One is not estopped from asserting that the judge making an order for a new trial had jurisdiction to make the same, because in another proceeding he had moved to quash an indictment for subornation of perjury, in connection with such new trial, on the ground that the judge acted beyond his jurisdiction in granting the motion, because not made within the time prescribed by a rule of court, the indictment being quashed on a different ground and one not taken by the defendant.

THE facts, which involve the jurisdiction of the District Court to grant new trials during or after the term, are stated in the opinion.

*Mr. Charles B. Parkhill* for appellant.

*Mr. Assistant Attorney General William Wallace, Jr.,* for appellee.

MR. JUSTICE PITNEY delivered the opinion of the court.

This is an appeal from a final order discharging a writ of *habeas corpus* and remanding appellant to the custody of the United States Marshal. The facts are as follows: Appellant was indicted in the United States District Court for the Southern District of Florida, at Tampa,

for a violation of a section of the Criminal Code, and in
the month of March, 1912, was tried and found guilty.
On the twelfth day of the same month he was sentenced
to confinement in the penitentiary at Atlanta for the term
of one year and six months. On the same day, and after
passing the sentence, the court entered the following
order: "Ordered that court be adjourned in accordance
with General Rule No. 1, and all orders and other matters
be entered as of the term. Thereupon court is adjourned
as ordered." After the entry of this order, Judge Locke,
the district judge, went to Jacksonville, in the same dis-
trict, and the deputy clerk noted on the minutes from day
to day that court was open in accordance with General
Rule No. 1, after which he entered orders made from time
to time by the court in vacation. On May 24, 1912,
appellant filed a motion for a new trial upon the ground
of newly discovered evidence, with several affidavits in
support of it. On June 26 Judge Locke, at Jacksonville,
granted this motion, and made a proper order, pursuant
to which appellant was brought to trial on February 11,
1913, when the jury disagreed. He was again tried on
March 13, 1914, and the jury returned a verdict of not
guilty. Thereafter, and in February, 1915, the persons
who had made the affidavits in support of the motion for a
new trial were indicted for perjury, and appellant was in-
dicted for subornation of perjury. Appellant demurred
to this indictment and moved to quash it upon the ground
that Judge Locke had no jurisdiction to grant a new trial
because the motion was not filed within four days after
the verdict. The demurrer and motion to quash were
heard by the then presiding judge, who sustained the de-
murrer and quashed the indictment upon the ground that
Judge Locke had no power or authority, after the making
of the adjournment order of March 12, 1912, to vacate
or set aside the sentence passed upon appellant on that
date.

Thereafter, and on March 20, 1915, the Government procured a commitment to be issued upon the original judgment of conviction, and it is under this writ that appellant is now held in custody.

Two questions arise: (1) Were the order for a new trial, and the trial proceedings had thereunder, null and void? (2) If not, should they nevertheless be so regarded as against appellant, because of what he did in obtaining the quashing of the indictment for subornation of perjury?

Under the first head, counsel for appellee cites a rule of the district court reading thus: "Motions for new trials shall be made within four days after the entry of the verdict, during which time no judgment shall be entered, except by leave of court," etc. We find in the record no evidence that there was such a rule; but, assuming we may take judicial notice of its existence, it was a mere regulation of practice, and a breach of it would be, at the utmost, a mere error of procedure, not affecting the jurisdiction.

The principal insistence, and the ground upon which the court rested the decision that is now under review, is that the adjournment order of March 12 brought the term to an end, so far as criminal business was concerned, and left the court without jurisdiction to entertain the motion of May 24 or grant a new trial thereon, because a court of law cannot set aside or alter its final judgment after the expiration of the term at which it was rendered, except pursuant to an application made within the term. *United States* v. *Mayer*, 235 U. S. 55, 67.

The order of March 12 must be read in connection with the General Rule to which it refers, and this must be interpreted in the light of the law regulating the terms and the business of the court. General Rule No. 1 is as follows:

"The law requiring the court to be always open for the transaction of certain kinds of business which may be

transacted under the statutes, and under the orders of the . judge who may at the time be absent from the place in which the court is held, and which business can be transacted by the clerk under the orders of the judge, and is transacted from day to day in the court, it is ordered that, pending the temporary absence of the presiding judge of this district from the district, or the division of the district in which business is presented to be transacted, the clerk be present, either by himself or his deputy, daily, for the transaction of business, and upon such days as there is business to be transacted the court be opened, and that a record of the same be entered upon each of said days upon the minutes."

The provisions of law referred to are to be found in the Judicial Code (act of March 3, 1911, c. 231; 36 Stat. 1087, 1108), of which § 76 divides the State of Florida into two districts, northern and southern, and provides: "Terms of the district court for the southern district shall be held at Ocala on the third Monday in January; at Tampa on the second Monday in February; at Key West on the first Mondays in May and November; at Jacksonville on the first Monday in December; at Fernandina on the first Monday in April; and at Miami on the fourth Monday in April. The district court for the southern district shall be open at all times for the purpose of hearing and deciding causes of admiralty and maritime jurisdiction."

Other sections to be considered are: Section 9 (§§ 574 and 638, Rev. Stat.), which declares that the District Courts, as courts of admiralty and as courts of equity, shall be deemed always open for the purpose of filing pleadings, issuing and returning process, and making interlocutory motions, orders, etc., preparatory to the hearing upon the merits; § 10 (§ 578, Rev. Stat.), requiring such courts to hold monthly adjournments of their regular terms for the trial of criminal causes when the business requires it;

and § 11 (§ 581, Rev. Stat.), which declares that a special term of the District Court may be held at the same place where any regular term is held, or at such other place in the district as the nature of the business may require, and at such time and upon such notice as may be ordered by the district judge, and that any business may be transacted at such special term which might be transacted at a regular term.

The provision of § 76 which requires the District Court to be open at all times for the purpose of hearing and deciding admiralty causes traces its origin to the act of February 23, 1847 (c. 20; 9 Stat. 131), which established the southern district of Florida, evidently for the especial purpose of disposing of admiralty business; and this particular provision was carried into the Revised Statutes as § 575. It covers the *hearing and deciding* of admiralty causes, while the provision now found in § 9, Jud. Code (§§ 574 and 638, Rev. Stat.), which originated in an act of August 23, 1842 (c. 188, § 5; 5 Stat. 517), relates to interlocutory proceedings *"preparatory to the hearing."*

The statutory provisions referred to are designed to render the District Courts readily accessible to applicants for justice in all branches of the jurisdiction; and while they *require* those courts to be always open only as courts of admiralty and as courts of equity, they *permit* "special terms" to be held at any time for the transaction of any kind of business.

The celebrated remark of Lord Eldon: "The Court of Chancery is always open," (*Temple* v. *Bank of England,* 6 Ves. Jun. 770, 771), evidenced the great adaptability of the practice of that court to the needs of litigants; and modern legislation has shown a strong tendency to reform the practice of common law courts by facilitating the transaction of their business in vacation. The sections we have quoted from the Judicial Code indicate a policy of avoiding the hardships consequent upon a closing

of the court during vacations. The General Rule in question was evidently designed to carry out this policy and should receive a liberal interpretation consonant with its spirit: that is, as keeping the term alive, by adjournments from day to day, pending the temporary absence of the presiding judge, so that court might and should be actually opened upon such days as there was business of any character to be transacted. Thus interpreted, its effect was not different from that of the rule which this court, in *Harlan* v. *McGourin*, 218 U. S. 442, 449, 450, construed as keeping the court open from the beginning of one statutory term until the beginning of the next. Judge Locke so construed the General Rule and the adjournment order made under it, when he entertained and granted the motion for new trial filed May 24, 1912, and we are satisfied that he committed no jurisdictional error in so doing. It is obvious that the order for a new trial necessarily vacated the sentence of March 12, 1912, and that the subsequent acquittal of appellant exhausted the power of the court under the first indictment.

Nor is appellant, in our opinion, estopped to assert the jurisdiction of Judge Locke to entertain the motion for a new trial. The estoppel is sought to be based upon the position he is said to have taken in demurring to and moving to quash the indictment for subornation of perjury. The record shows, however, that the demurrer and motion were based upon the ground that the motion for new trial was not filed within four days after verdict. This was true in fact, but the court in effect held it not well founded in law; for it proceeded to sustain the demurrer and quash the indictment upon another ground, and one not taken by appellant, viz., that the adjournment order of March 12, 1912, brought the term to a conclusion and deprived Judge Locke of power to set aside the final judgment and sentence passed upon ap-

pellant on that day. The fundamental ground of an estoppel is wanting, and we need not weigh other considerations that might operate against it.

The judgment of conviction having been vacated by an order of the court made within the scope of its power and jurisdiction, there remains no legal foundation for the commitment issued on March 20, 1915, and appellant is entitled to be discharged from custody.

*Final order reversed, and the cause remanded for further proceedings in conformity with this opinion.*

MR. JUSTICE MCREYNOLDS took no part in the consideration or decision of this case.