SHULTS BREAD CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 20652, 20653.    Promulgated January 26, 1928.

*William C. Sullivan, Esq., R. F. Garrity, Esq.,* and *Leon F. Cooper, Esq.,* for the petitioner.

*P. C. Alexander, Esq.,* and *Arthur H. Murray, Esq.,* for the respondent.

OPINION.

ARUNDELL: That portion of the rules of practice of the Board which is here involved is the first sentence of Rule 14, reading as follows:

After service upon him of a copy of the petition, the Commissioner shall have 60 days within which to file an answer or 20 days within which to move in respect of the petition.

The Board's rules of practice were promulgated pursuant to the authority granted by section 907(a) of the Revenue Act of 1924, as amended by Title X of the Revenue Act of 1926, which reads:

Notice and an opportunity to be heard shall be given to the taxpayer and the Commissioner and a decision shall be made as quickly as practicable. Hearings before the Board and its divisions shall be open to the public and shall be stenographically reported. The Board is authorized to contract for the reporting of such hearings, and in such contract to fix the terms and conditions under which transcripts will be supplied by the contractor to the Board and to other persons and agencies. The proceedings of the Board and its divisions shall be conducted in accordance with such rules of practice and procedure (other than rules of evidence) as the Board may prescribe and in accordance with the rules of evidence applicable in courts of equity of the District of Columbia. The mailing by registered mail of any pleading, order, notice, or process in respect of proceedings before the Board shall be held sufficient service of such pleading, order, notice, or process.

The question with which we are confronted is whether the rule fixing the time for the Commissioner to answer is mandatory and binding on litigants and the Board or whether strict compliance with the rule may be waived by the Board in its discretion.

Both parties, in their arguments, take as a premise the operation and effect of rules of court and set out at great length the varying interpretations that courts have placed upon rules of practice and procedure. The petitioner of course takes the position that rules of court are binding upon both the court and parties litigant, while the respondent argues that there is a discretion vested in courts to suspend particular cases from the operation of the rules. Both of the parties have failed to point out whether the same lines of reasoning applied to the construction of rules of court are applicable in construing the rules of this Board. If the same reasoning applies it must be on the postulate that the Board is a court. The Board in many respects occupies a unique position in the governmental scheme. It is clearly denominated by Congress as "an independent agency in the executive branch of the Government." Its functions, however, are at least quasi judicial, *Goldsmith* v. *United States Board of Tax Appeals*, 4 Fed. (2d) 422; 270 U. S. 117, and it has "appellate powers which are judicial in character," *Blair* v. *Oesterlein Machine Co.*, 275 U. S. 220. It has no administrative duties.

Its proceedings are required by statute to be conducted " in accordance with the rules of evidence applicable in courts of equity in the District of Columbia." From it, despite its being an executive body, appeals may be taken directly to the Federal courts. These considerations serve to show the anomalous character of the Board and in our opinion decisions of the judiciary as to their rules can not be taken bodily and set down as conclusive upon us.

The parties have urged upon us many decisions of the courts interpreting their rules, which decisions we have carefully examined to determine whether there is anything in the attitude of the judiciary toward their rules of practice which may be of aid in interpreting ours. It must be conceded that the decisions in the State and Federal courts covering the question of the power of courts to waive strict compliance with their rules are not uniform, but from a careful consideration of the many cases cited by the parties and as a result of our own research we find the weight of authority to be among both State and Federal courts that a court has the inherent power to suspend a rule of its own making.

In *Poultney* v. *City of La Fayette*, 12 Pet. 472, the defendants applied for an extension of time to the next term of the Circuit Court for preparing their defense. Complainants moved that the case be put on the rule docket of the court, which motion was denied. Complainants then sought a writ of mandamus to compel the placing of the case on the rule docket in order that they might proceed according to chancery practice. It was held by Chief Justice Taney that—

The rules of chancery practice, mentioned in the motion of the complainants, must, of course, mean the rules prescribed by this court for the government of the courts of equity of the United States, under the act of Congress of May 8th, 1792, ch. 137, § 2, which are undoubtedly obligatory on the circuit courts. But if the order had been made, pursuant to the motion, and the case transferred to the rules, under the direction of the clerk, the time asked for by the defendant would, in effect, have been refused; and under the 6th rule of practice prescribed for the circuit courts, the complainants would have been entitled to proceed on their bill as confessed, if the defendants did not appear and file their answer within three months after the day of appearance limited to these rules. We think the court did right in refusing this motion. Every court of equity possesses the power to mould its rules in relation to the time and manner of appearing and answering, so as to prevent the rule from working injustice; and *it is not only in the power of the court, but it is its duty, to exercise a sound discretion upon this subject,* and to enlarge the time, whenever it shall appear that the purposes of justice require it. (Italics ours.)

In the case of *Wallace* v. *Clark* (Cir. Ct., Dist. Mass., 1847), 29 Fed. Cas. No. 17098, defendant failed to file a plea in abatement

within the time prescribed by a rule of court and exception was made to the Court's jurisdiction. The rule involved read:

All pleas in abatement and to jurisdiction shall be filed in court within two days after the entry of the action and not afterwards.

It was held:

It is argued by the counsel for the plaintiff, that this court possesses no power to dispense with rules on any terms, or for any cause. In support of this are cited *Hine* v. *Dean*, 8 Pet. [33 U. S.] 269; *Thompson* v. *Hatch*, 3 Pick. 515; and 5 Pick. 188. But I see nothing in these cases which settles the law in that way. In *Thompson* v. *Hatch*, 3 Pick. 512, it was held only that one judge could not dispense with rules made under a statute by the whole court, nor could the whole court dispense with a rule or order prescribed unconditionally by a statute itself. See also 14 Mass. 134. So, in *Bank of U. S.* v. *White*, 8 Pet. [33 U. S.] 269, the question arose under rules prescribed by the supreme court of the United States to the circuit courts in equity. But even there, it seems to be implied that the circuit courts might enlarge the time prescribed for an answer. And the 89th of these rules expressly authorizes the several circuit courts to alter or add to that kind of rules made by the supreme court, if not prescribing what is inconsistent with them.

The rule now under consideration is, however, one made by this court itself, for its own common law practice. It comes, therefore, under the principle of none of these adjudged cases, but raises the question simply, whether any court making rules for its own convenience and the benefit of suitors, can not dispense with them in any case for good cause shown, and on proper terms. This is not abrogating them entirely, nor suspending them without a sufficient reason, and without full indemnity to the opposite side, and consequently such a course, instead of destroying or proving the inability of rules, tends to establish their general excellence, and confirms them as the general guide, and allows no departure from them without ample cause. If courts could not, in cases of accident or necessity, with a view to reach the truth, give relief or indulgence on making the other party indemnity for the delay, our rules would be worse than any principles of the law in common cases, which are often relieved against in equity, and sometimes at law in the event of accident and mistake. On the contrary, such rules are mere engines to promote convenience in business, *and when, from any peculiarity, they require to be suspended or waived in order to promote justice, the power which made them can and ought to suspend them. This is done daily in all courts as to their own rules, made by themselves, in enlarging time to plead, and curing other difficulties.* So it is done in all legislatures, as to their own rules. The mistake on this subject probably arises from not discriminating critically between rules adopted by a statute, like the articles or rules of the war department, or certain rules and general orders for courts in some particulars, about pleading and practice, as by statute of 3 Wm. IV., and to be reported to court, and which can not be waived, and those made or adopted merely by the same court, which is asked for good reasons to dispense with them, and which may be waived by them on proper reasons and terms. (Italics supplied.)

In *Wetzell* v. *Bussard* (Cir. Ct., District of Columbia, 1821), 29 Fed. Cas. No. 17,471, where the defendant's attorney had only recently been admitted to practice and was ignorant of the rule requiring

a plea of the statute of limitations to be filed strictly within the rule day, the court suspended the rule and allowed the plea to be filed.

To the same effect, and relying on the *Wetzell* case, is *Union Bank* v. *Eliason* (Cir. Ct., District of Columbia, 1825), 24 Fed. Cas. No. 14,350, in which the plea of the statute of limitations had been stricken as filed after rule day, but on subsequent motion of defendant was reinstated. The opinion reads in part:

> It is within the discretion of the court to admit or refuse any plea offered after the expiration of the rule to plead.

The case of *United States* v. *Breitling*, 20 How. 472, went up from the United States Circuit Court upon writ of error. The bill of exceptions was signed the day after adjournment of the Circuit Court. The Circuit Court by rule adopted the State practice which provided that no bill of exceptions could be filed after adjournment except by consent of counsel. The defendant contended that the bill of exceptions could not be considered by the Supreme Court. It was held by Chief Justice Taney:

> But the answer to this objection is, that the statute of Alabama, and the regulation it prescribes to the courts of the State, can have no influence on the practice of a court of the United States, unless adopted by a rule of the court. *And it is always in the power of the court to suspend its own rules, or to except a particular case from its operation, whenever the purposes of justice require it.* The attention of this court has, upon several occassions, been called to this subject, and the rule established by its decisions will be found to be this: The exceptions must show that it was taken and reserved by the party at the trial, but it may be drawn out in form and sealed by the judge afterwards. This point was directly decided in the case of *Phelps* v. *Mayor*, 15 How. 260; and then again, in *Turner* v. *Yates*, 16 How. 28. And the time within which it may be drawn out and presented to the court, must depend on its rules and practice, *and on its own judicial discretion.* (Italics supplied.)

In *Hunnicutt* v. *Peyton*, 102 U. S. 333, judgment was entered in the Circuit Court on February 17, 1877. Defendant's bills of exception were signed by the judge on February 28, and filed on March 1. On the latter day an order was made by the court extending until that day the time for presenting and filing the bills. The rule of court involved provided:

> No bill of exceptions will be signed unless presented to the judge within five days after the close of the trial, unless further time be allowed by the court.

Plaintiffs insisted that the bills of exception could not be considered part of the record and that they were not properly before the Supreme Court for review, on the ground, among others, that the presentation to the judge was not within the time prescribed by the rules of the court. It was held (p. 353):

> But the rule requiring the presentation of bills for the signature of the judge within five days is not a rule which controls his action. He may depart

from it in order to effectuate justice. *Stanton* v. *Embrey*, 93 U. S. 548. It is a direction to the parties, and it expressly reserves the power to enlarge the time.

In *Southern Pacific Co.* v. *Hamilton* (C. C. A., 9th Cir.), 54 Fed. 468, the defendant contended that the writ of error should be dismissed on the ground among others that no bill of exceptions or statement as required by the rules of the Circuit Court was made or presented to the judge of the court within the time prescribed. The court in overruling the contention said:

Besides, it is within the power of the court to suspend its own rules, or to except a particular case from them, to subserve the purpose of justice. *U. S.* v. *Breitling*, 20 How. 252. See, also, *Dredge* v. *Forsyth*, 2 Black, 568, and *Kellogg* v. *Forsyth*, Id. 573.

In *Southern Pac. Co.* v. *Johnson* (C. C. A., 9th Cir.), 69 Fed. 559, the defendant contended that a bill of exceptions had not, under the rules of court, been seasonably presented. It was held:

According to the rules of the circuit court, above referred to, no further time having been granted by the court, or consented to by the parties, the time within which to file a bill of exceptions expired on June 27, 1893. By the strict terms of these rules, the bill of exceptions would be deemed to have been abandoned, and the right thereto waived. But adjudications in the supreme court of the United States and in the circuit court of appeals hold that rules of court fixing the time within which bills of exceptions are to be presented, allowed, or settled, and certified to by the trial judge, are merely directory. These decisions are to the effect that such rules do not control absolutely the action of the judge; that he is at liberty to depart from their terms, to subserve the ends of justice. *U. S.* v. *Breitling* (1857) 20 How. 254; *Dredge* v. *Forsyth* (1862) 2 Black, 568; *Muller* v. *Ehlers* (1875) 91 U. S. 249; *Hunnicutt* v. *Peyton* (1880) 102 U. S. 350; *Chateaugay Ore & Iron Co., Petitioner* (1888) 128 U. S. 544, 9 Sup. Ct. 150; *Hume* v. *Bowie* (1893) 148 U. S. 245, 13 Sup. Ct. 582. Such is the law of this circuit, as declared in the case of *Southern Pac. Co.* v. *Hamilton*, 4 C. C. A. 441, 54 Fed. 468, 474. In other words, these rules are regarded as rules of procedure, which may be dispensed with, in the discretion of the judge, provided, always, that the exceptions themselves are seasonably taken and reserved.

In the case of *State of Florida* v. *Charlotte Harbor Co.* (C. C. A., 5th Cir.), 70 Fed. 883, the court in the " exercise of sound discretion " allowed the docketing of an appeal notwithstanding that two of its rules had been disregarded, one " in spirit " by a claimed order of enlargement of time for filing the transcript, and the other " in letter and spirit " through failure to file with the clerk the order of enlargement. The court said in part:

The rules of this court in regard to the return day of appeals and to the filing the transcript are directory, and it is within the sound discretion of the court to relieve parties who have not complied therewith.

In *Benjamin Schwartz & Sons* v. *Kennedy* (Cir. Ct., Dist. Oreg.), 156 Fed. 316, an order *pro confesso* had been taken and thereafter

defendant moved to be relieved of the default and for leave to file an answer. Defendant's counsel "supposed that he had filed a demurrer to the bill, but when he came to call it up, he was apprised of the fact that he had not done so." The court held:

I am impressed that counsel was acting in entire good faith, but found he was mistaken, and for this reason the default should be reopened.

The facts in Spokane Interstate Fair Assn. v. Fidelity & Deposit Co. (C. C. A., 9th Cir.), 15 Fed. (2d) 48, are sufficiently stated in the part of the opinion quoted herewith:

Defendant moves to strike from the record the bill of exceptions and also to dismiss the writ. We have considered, but do not deem it necessary to discuss at length, the issues presented by these motions. It is sufficient to say that, notwithstanding the general rule of the court providing that without consent of the parties extensions of the time in which to present a bill of exceptions or a petition for a new trial would not be granted for more than 30 days, the court had the power in the exercise of a, sound discretion to grant a greater length of time. Poultney v. LaFayette, 12 Pet. 472, 9 L. Ed. 1161; U. S. v. Breitling, 20 How. 252, 15 L. Ed. 900; Hunnicutt v. Peyton, 102 U. S. 333, 353, 25 L. Ed. 113; Abbott v. Brown, 241 U. S. 606, 36 S. Ct. 689, 60 L. Ed. 1199; So. Pac. Co. v. Johnson, 59 F. 559, 16 C. C. A. 317; Russo-Chinese Bank v. National Bank, 187 F. 80, 109 C. A. 398; Czizek v. W. U. Tel. Co. (C. C. A.) 272 F. 223; Payne F. Garth (C. C. A.) 285 F. 301, 310. That being true, and court still having jurisdiction to grant such extensions when the orders were made, neither motion is thought to be well taken, and both are therefore denied. (Italics supplied.)

In United States v. Barber Lumber Co. (C. C. A.), 169 Fed. 184, there was involved a motion to dismiss because of the failure of the Government to file a timely replication. The court, after reviewing at length cases in which the Government had been defaulted for failure to comply with rules, suspended its rule, saying:

I have considered both the conveniences and the necessities of the parties, and it is my conclusion that the replication be filed nunc pro tunc; * * *.

In Burget v. Robinson (C. C. A.), 123 Fed. 262, there was involved a rule reading:

A petition for a rehearing after judgment may be filed at the term at which the judgment is entered, and within one calendar month after such entry, and not later, unless by leave granted during the term.

In that case the court suspended the rule and said:

The requirement that such a petition should be presented during the term at which the judgment was rendered is entirely for the protection of the court. So far as the bar is concerned, it is only a caution as to the necessity of filing a petition during the term at which the judgment was rendered in order to be clearly within one's rights. Being for the protection of the court, clearly it can be waived by it when justice requires. United States v. Breitling, 20 How. 252, 254, 15 L. Ed. 900.

The decisions of the State courts are to the same effect. To quote them would carry this opinion to an unnecessary length and would

serve no useful purpose, so we content ourselves with citing cases from various jurisdictions. See *Geffinger* v. *Klewer*, 227 Ill. 598; 81 N. E. 712; *Hardesty* v. *Town of Mt. Eden*, (Ky.) 86 S. W. 687; *Mutual Life Ins. Co.* v. *Evans*, 185 Ky. 335; 214 S. W. 927; *Ellis* v. *Oliphant*, 159 Iowa 514; 141 N. W. 415; *Werten* v. *Newforth*, 44 Kans. 742; 25 Pac. 204; *Sanborn* v. *Boston & M. R. R.*, 76 N. H. 65; 79 Atl. 642; *Sylvester* v. *Olson*, 63 Wash. 285; 115 Pac. 175; *Dolan* v. *Stone*, 63 Kans. 450; 65 Pac. 641; *National Union Bank* v. *Marsh*, 46 Vt. 443; *Sullivan* v. *Wallace*, 73 Cal. 307; 14 Pac. 789; *St. Louis & S. F. R. Co.* v. *Zumwalt*, 31 Okla. 159; 120 Pac. 640; *Lichtenberger* v. *Worm*, 41 Nebr. 856; 60 N. W. 93; *Bertagnolli Bros.* v. *Bertagnolli*, 23 Wyo. 228; 148 Pac. 374; *City of Jefferson* v. *Jones*, 74 Tex. 653; 12 S. W. 749; *Berri* v. *Rogers*, 168 Cal. 736; 145 Pac. 95.

While the facts in some of the cases quoted from and cited are different from those involved here, the decisions quoted point out the wide discretion vested in courts to suspend rules of their own making and satisfy us that we had the power, in making the order of December 22, 1926, to grant the respondent additional time to answer.

There are cases from which a contrary conclusion might be drawn, but they seem to us after careful research to be in the minority and based on facts which impelled the court to hold that, either by direction of a superior court or a statutory provision, discretion in the matter had been taken away and that compliance with the rules was obligatory. Thus in *Rio Grande Irrigation Co.* v. *Gildersleeve*, 174 U. S. 603, relied on by petitioner, where it was held that the trial judge had no discretionary power to dispense with a rule of court, it appears that the rule involved was one made by the Supreme Court of the Territory of New Mexico for the direction of the trial court. Our decision here is not at cross purposes with that one, for we make no attempt to say that we could suspend a rule prescribed for our practice by an appellate court.

Aside from the District of Columbia cases, which rely largely on the *Gildersleeve* decision and which will be hereafter referred to, we find that case cited only once by the Supreme Court and only four times by any other Federal court. In the one Supreme Court case, *Copper King of Arizona* v. *Johnson*, 195 U. S. 627, the court, by a *per curiam* decision, affirmed the Supreme Court of Arizona (76 Pac. 594), which refused to open a default judgment of the trial court, and in such refusal said in part:

The appellate court should, therefore, in its review of such action, recognize that such matters must rest largely in the sound discretion of the trial court, and upon such review should not disturb such action and the exercise of such discretion unless it clearly appears that such discretion has been abused.

In one of the four Federal court cases above mentioned, the *Gildersleeve* case is referred to only in the dissenting opinion, and in the other three cases it is mentioned in connection with points that are not involved here.

Petitioner cites a number of decisions of the Court of Appeals of the District of Columbia. On an examination of them we do not find them as clearly in petitioner's favor as it would have us believe. In certain of the cases, among them being *District of Columbia* v. *Roth*, 18 App. D. C. 547; *Talty* v. *District of Columbia*, 20 App. D. C. 489; *Mulvihill* v. *Clabaugh*, 21 App. D. C. 440, and *Hines* v. *Hines*, 43 App. D. C. 227, it appears that the rules concerned were prescribed by the Court of Appeals for the guidance of the lower court which had attempted to waive compliance with them. Such cases fall within the *Gildersleeve* decision, *supra*, and are not in point. So, too, in *Ex parte Dante*, 228 U. S. 429, the rule involved was one prescribed by the District of Columbia Court of Appeals for the lower court with respect to taking or perfecting of appeals and the lower court had attempted to enlarge the time prescribed. Nor are District of Columbia cases in entire harmony on the question of adherence to rules. For instance, in *Johnson-Wynne Co.* v. *Wright*, 28 App. D. C. 375, the rules of court are spoken of as having the force of law, yet in the same case the court cites with approval the earlier decision in *Lindsey* v. *Pennsylvania R. Co.*, 26 App. D. C. 125, in which there was a noncompliance with a rule relating to settlement of bills of exception, but the court nevertheless denied a motion to strike the bill.

In our case, there is not only an absence of rules prescribed by an appellate body in respect of filing answers, but the Board has expressly reserved to itself by Rule 20 the right to grant extensions of time. This rule reads:

Continuances, extensions of time (except for the filing of the petition), and adjournments may be ordered by the Board on its own motion or may be granted by it in its discretion on motion of either party filed in writing and showing good and sufficient cause therefor.

Counsel for the petitioner argues that as the respondent's application for extension of time contained no "good and sufficient cause" there was nothing upon which the Board could exercise any discretion. Any omission in this regard we feel has long since been cured by the affidavits filed by respondent, the substance of which may be found in our findings of fact.

There is also a question raised as to the power of the Board to enter a default judgment against the Commissioner. In the view we take of the case it is unnecessary for us to decide this, or to state to what length we might lawfully go in a case of contumacy. We

have no doubt that, given a proper case, we have ample power to enforce our rules, else the provisions of the statute giving us power to make rules would be meaningless and our "appellate powers which are judicial in character" (*Blair* v. *Oesterlein Machine Co.*, 275 U. S. 220), of no avail to parties seeking a settlement of their differences. In the cases before us the respondent has not only evinced a desire to proceed in the case but has tendered his answer within the time allowed by the Board's order, and has shown what we consider a sufficient ground to warrant the exercise of our discretion in the matter of receiving such answers. The infringement of the rule here was merely technical and clearly it was not willful. There has been no violation of petitioner's statutory rights by the Commissioner's action, and the Commissioner is here merely asking that he be given his statutory right under section 907 (a), which provides that:

Notice and an opportunity to be heard *shall* be given to the taxpayer and the Commissioner * * *. (Italics supplied.)

An attempt to cut off the statutory right of a party to be heard because of a technical infringement of a rule, brought about by an effort to comply with the wishes of the other party in seeking a settlement out of court, would in our opinion be an abuse of discretion and, what is more serious, would amount to placing the rule to the forefront of the statute. No rule of the Board or of any court can claim such arrogation. This principle is of course well recognized, and the Circuit Courts of Appeals for the Third and Seventh Circuits have so held specifically with reference to the Board's rules in *Weaver* v. *Blair*, 19 Fed. (2d) 16, and *Reliance Mfg. Co.* v. *Blair*, 19 Fed. (2d) 789. The rule involved in those cases (Rule 8) provided, pursuant to statutory authority, for the payment of a filing fee as a condition precedent to the docketing of a petition and it was specifically provided that the filing of a petition would not be antedated to a time prior to the time of payment of the fee. In the *Weaver* case, the court said:

The act of the board in making the payment of a fee a condition precedent to the statutory appeal allowed by the act was not jurisdictional, but indidental and procedural, and in our judgment the attempt to make the statutory jurisdiction created by Congress dependent and subordinate to the procedural rule making prepayment of the fee jurisdictional is unwarranted.

In the *Reliance* case a *per curiam* decision was rendered concurring fully in the views expressed in the *Weaver* case.

Reverting to the question of the discretion in the Board to excuse a strict compliance with its rules, we find in our records many cases where we have allowed departures from the letter of the rules in such cases as taxpayers having failed to prepare petitions exactly as prescribed or where they have been delinquent in the matter of

filing amended petitions. What is more to the point, we find that in at least four cases such as we have here the Board has denied motions of petitioners for judgment by default. In the case of *Eugene Siegel, Executor, Estate of Jacob Siegel,* Docket No. 18879, petitioner's motion for default judgment was considered by the entire Board and under date of January 7, 1927, the following order was entered:

This proceeding came on for hearing on petitioner's motion for judgment by default on the ground that the Commissioner's answer was filed on the 61st day after service upon him of the petition, and the Commissioner having tendered said answer theretofore filed, and having asked that the same be received and filed by the Board:

The matter being within the discretion of the Board it is:

ORDERED, that the motion for default judgment be and the same is hereby denied; that the answer be received and filed, and that the proceedings be restored to the General Calendar.

In the cases of *Carnation Milk Products Co.* v. *Commissioner,* Docket No. 19552; *Geo. J. Baldwin,* Docket No. 19144; and *Kemp-Munger-Allen Oil Co.* v. *Commissioner,* Docket No. 15094, orders were entered under dates of January 29, 1927, March 2, 1927, and July 1, 1927, respectively, denying petitioner's motions for default judgments. In the *Carnation Milk Products* case the *Siegel* case, *supra,* was cited in the order denying the motion for judgment. In the *Kemp-Munger-Allen Oil* case, as in that of *Siegel,* the motion was denied on the ground of " the matter being within the discretion of the Board * * *."

We reach the conclusion that in a proper case it is within the sound discretion of the Board to waive strict compliance with a rule of practice of its own making, and in support of this view we find ample authority in the decisions of the courts and in precedents established by the Board.

Numerous affidavits were filed by representatives of the parties, setting forth, for the most part, their recollections of the dates and subject matter of conversations among them with reference to these cases. The views set forth are not entirely in accord, in that there is some confusion as to dates on which certain conversations are alleged to have occurred and as to what some of the parties claim to have said to others. We have taken as the basis for our findings of fact the allegations respecting which the parties are in accord and those that are uncontradicted. It clearly appears that a representative of the petitioner requested of the General Counsel's office that the case be sent back to the Income Tax Unit for further consideration of one or more of the allegations of error contained in the petitions, and that the attorney having charge of the cases took the petitioner's request under advisement. The attorney in the General

Counsel's office subsequently decided that petitioner's request might be granted and prepared the cases for dispatch to the Income Tax Unit and at the same time prepared the application for extension of time to file answers. We think that in view of these facts there was reasonable cause for the respondent's delay in making application for extension, and, as pointed out above, the granting of the application being within the discretion of the Board, the order granting it should not now be set aside. Petitioner's motions are therefore denied. The answers tendered by respondent, having been presented within the time allowed by the Board's order, will be received and docketed as of the date tendered, to wit, March 18, 1927.

In the view we take of the case, other questions argued by the parties, such as whether this is a proceeding against the United States, and whether the Government is bound by rules of court to the same extent as other litigants, need not be considered.

Reviewed by the Board.

*Petitioner's motion to vacate the order granting additional time within which to answer and for judgment by default is denied.*

VAN FOSSAN dissents.

STERNHAGEN, dissenting: I have no doubt that this is a question for the discretion of the Board. Congress gave the Board the power to make its rules of practice and procedure because it believed that in this limited field of adjudication of a special kind of controversy in which the Government was always a party and the exercise of its taxing power always being tested and construed this tribunal was the best judge of the details of the machinery for solving the multitude of disputes constantly arising. This power was exercised by the Board when in clear language it framed its rules. These rules must be either enforced as adopted or lose their force entirely, and this is equally true as against the taxpayer or the Commissioner. No one member should be permitted to decide whether the rule, clearly not complied with, is to be temporarily set aside. Parties, through the bar, should not be required to cope with such uncertainty. The answer was not filed in time and no motion about it was timely made or embodied the required good cause. Hence, there was no answer.

I do not go so far as to say that judgment should be given for petitioner by default, because the prevailing opinion does not reach that point for consideration. The failure to file an answer may not require such a definitive result. But to me it seems that there has been a failure to file an answer according to the rules and the further proceedings should be shaped as if no answer whatever had been filed.

But, as I have said, the Board's construction and enforcement of its own rules is within its own wisdom and my disagreement is only in the instance of its exercise.

GREEN, dissenting: The majority opinion is based squarely on the proposition that "a court has the inherent power to suspend a rule of its own making." After the citation and discussion of a number of cases, it is said:

> While the facts in some of the cases quoted from and cited are different from those involved here, the decisions quoted point out the wide discretion vested in courts to suspend rules of their own making and satisfy us that we had the power, in making the order of December 22, 1926, to grant the respondent additional time to answer.

An examination of many cases leads me to the conclusion that the sounder rule and the one adopted in the majority of the jurisdictions is that courts may not suspend rules of their own making. (See *Thompson* v. *Hatch*, 3 Pick. (Mass.) 512; *Rio Grande Irrigation & Colonization Co.* v. *Gildersleeve*, 174 U. S. 603; *Richardson* v. *Green*, 130 U. S. 104, 112; *United States* v. *Fremont*, 18 How. 30; *District of Columbia* v. *Humphreys*, 11 App. D. C. 68; *District of Columbia* v. *Roth*, 18 App. D. C. 547; *Talty* v. *District of Columbia*, 20 App. D. C. 489; *Drew* v. *Hogan*, 26 App. D. C. 55; *Nealon* v. *Davis*, 18 Fed. (2d) 175.) This of course has nothing to do with the exercise of discretion where that is vested in the court, either by the rule or by statute.

Considerable reliance is placed upon the case of *United States* v. *Breitling*, 20 Howard 252. In *Muller* v. *Ehlers*, 91 U. S. 249, the Supreme Court, in speaking of the *Breitling* case, said:

> That case went to the extreme verge of the law upon this question of practice and we are not inclined to extend its operation.

The *Gildersleeve* case, *supra*, was decided subsequent to the *Breitling* case.

The opinion in the instant case quotes our rule which provides that continuances, etc., may be ordered by the Board on its own motion or may be granted by it in its discretion on the motion of either party filed in writing and showing good and sufficient cause therefor. It then holds that the omission to incorporate in the motion a showing of good and sufficient cause may be supplied long after the order was made. No reason is given for this conclusion and it is believed that none can be given. In so holding the Board is not exercising its discretion, but is in fact ignoring the clear provision of the rule.

In the opinion the following is quoted from section 907: "Notice and opportunity to be heard shall be given to the taxpayer and the Commissioner," and the decisions in the cases of *Weaver* v. *Blair*, 19 Fed. (2d) 16, and *Reliance Manufacturing Co.* v. *Blair*, 19 Fed. (2d)

789, are cited, apparently for the proposition that the Commissioner has a right to be heard regardless of whether he has filed an answer. The cited cases do not so hold. All that either party is entitled to is a right to be heard in the manner prescribed by the statute and such rules as the Board itself may legally prescribe in accordance with the right vested in it by statute, and it is not here contended that the Board's rule is illegal or invalid.

Emphasis is placed upon the fact that the Board has heretofore frequently "allowed departures from the letter of the rules." I am unable to perceive any good reason why such a construction of the rules of this Board should form a basis or precedent for the continuation of such erroneous construction.

The result of the majority opinion is to leave the force and effect of the rules of this Board in such a condition of chaos there can be no uniformity in their enforcement. To my mind such a condition is wholly undesirable.

MURDOCK, dissenting: I dissent from the prevailing opinion but reserve my judgment on the question of whether or not the Board in another case might or might not have the right to exercise a sound discretion. Even if the member who extended the time had the right to exercise his discretion, no reasons for an extension of time within which to answer were advanced for his consideration and his action was arbitrary, without authority of law, an abuse of discretion and therefore erroneous. The order granting an extension of time within which to answer, in my opinion, should be set aside.

SIEFKIN, dissenting: It seems to me that any rule of this Board, when promulgated, must be enforced according to its terms until changed by the Board, and that to permit a member to vary or nullify it will result in a great deal of uncertainty in the trial of proceedings. Whether or not the proceedings here are analogous to an action in court, it would seem that the statute gives the Board power to prescribe its rules and makes the determination of what those rules should be and their interpretation a question of policy. If that is so, every consideration of policy is on the side of a certainty that the rules will be strictly adhered to instead of being subject to variation in any case, according to the ideas of the division hearing the case.

Even if no answer were filed, I believe the Board would still have the duty of deciding the case, and that proof would have to be introduced in support of the allegations of the petition. Under our rules the burden of proof is on the petitioner and I do not believe that a mere failure to answer the allegations of the petition has the effect of converting those allegations into facts which the Board can accept as true as though they had been admitted.