MAXEY, SR., APPELLANT, *v.* GATHER ET AL., APPELLEES.

(No. 4277—Decided November 21, 1952.)

*Mr. Robert E. Lee Maxey,* in propria persona.
*Mr. Alva J. Russell,* for appellees.

THOMPSON, J. The present matter constitutes an appeal to this court on questions of law from a judgment of the Common Pleas Court of Summit County, sustaining various demurrers to plaintiff's petition, granting motions to quash service of summons by other defendants, and dismissing plaintiff's petition.

The petition of plaintiff comprises 25 pages, 83 numbered paragraphs, and three specified causes of action against 31 parties defendant. Paragraph three of the

petition states that plaintiff brings his action and complaint against the defendants "in order to recover compensation for all of the damages that the said defendants have done to him, by their false actions and forged indictment of twenty forged, false and trumped up charges of robbery, larceny and for his false conviction, false imprisonment and any and all other injuries that the said defendants have done to the plaintiff * * *." Further, in paragraph 20, the petition states that certain of the defendants caused the grand jury of Summit county in May and June 1942 to forge an indictment against him of 20 false and forged counts for the sale of unregistered stock.

The petition alleges further in paragraph 30 that "through trickery, larceny, scheming, lies and misrepresentations of the law and a prejudicial judge and a fixed petit jury, and an unfair and unjust trial, and an unfair and unjust court," plaintiff was convicted on two of the charges and sentenced to the Ohio Penitentiary, the sentence being for a period of five years as to each charge, the sentences to run concurrently. The petition then avers that plaintiff appealed his conviction to the Court of Appeals and that the latter court "did wilfully, maliciously, knowingly, intentionally, corruptly and illegally affirm the decision of the Common Pleas Court of Summit County."

The petition recites further that plaintiff was thereafter taken into custody on February 10, 1945, held in the county jail in Akron for four days, then taken to the Ohio Penitentiary in Columbus, where he was confined for the full term of five years and released on February 13, 1950.

Plaintiff's petition, filed on January 4, 1951, names as defendants the trial judge, the officers who arrested him, the then county prosecutor, the three judges comprising the Court of Appeals at the time, the three

members then constituting the Ohio Pardon and Parole Commission, the warden of Ohio Penitentiary, the Director of Public Welfare for the state of Ohio and various surety companies on the bonds of certain of the public officials named as defendants.

Demurrers to the petition were filed by the former Director of Public Welfare, by the trial judge, by the individual judges of the Court of Appeals, by the county prosecutor and by various other defendants. The demurrers in each instance stressed one or more of the following grounds, namely, that the action was not brought within the time limited for the commencement of such actions, that the petition did not state facts setting forth a cause of action, or that there was a misjoinder of defendants. The court sustained the demurrers, dismissed the petition, and entered judgment against plaintiff for costs. Notice of appeal to this court was filed by plaintiff. No assignments of error and no bill of exceptions were filed in this court, but the case was argued and submitted here on briefs and oral argument, plaintiff acting as his own attorney.

The question before us is whether error was committed by the trial court. The transcript discloses that the petition in this case was filed on January 4, 1951, and the allegations of the petition recite that plaintiff was released from prison on February 13, 1950. The first praecipe was issued for defendants on February 14, 1951. The facts, therefore, indicate that more than one year intervened between the release of plaintiff from prison and the issuance of summons upon the petition.

The pertinent section of the General Code relating to actions of the character of the present suit is Section 11225. This section provides, in part, as follows:

"An action for libel, slander, assault, battery, malicious prosecution, false imprisonment or malpractice,

or upon a statute for a penalty or forfeiture, shall be brought within one year after the cause thereof accrued. * * *"

The foregoing section is to be read with the disability section, being Section 11229, which is as follows:

"Unless otherwise specially provided therein, if a person entitled to bring any action mentioned in this chapter, unless for penalty or forfeiture, is, at the time the cause of action accrues, within the age of minority, of unsound mind, or imprisoned, such person may bring it within the respective times limited by this chapter, after such disability is removed. When the interests of two or more parties are joint and inseparable, the disability of one shall inure to the benefit of all."

Examination of the foregoing sections makes it clear that under the facts disclosed by the petition any cause of action on the part of plaintiff as result of the deeds complained of would terminate within one year after the cause of action arose, or, if plaintiff was then under disability, within one year after plaintiff's disability was removed. In the instant case, any cause of action of plaintiff, therefore, terminated one year after his release from prison. This conclusion is inevitable in view of Section 11230, General Code, which provides that an action shall be deemed to be commenced within the meaning of Chapter 2, "Limitations of Actions," at the date of service of summons upon one of several defendants. Since none of the defendants in this case was served prior to February 16, 1951, we have no hesitation in determining that plaintiff's action is barred by the applicable statute of limitations.

What we have said is, to our minds, dispositive of the present action. We believe, however, that in view of the unusual and sensational charges by plaintiff in

this case involving public officials and the functioning of the courts, and clearly libelous if not protected by the privilege accorded court pleadings, we should be doing a disservice to plaintiff, who throughout has acted as his own counsel, if we omitted to express our belief that, aside from technical difficulties, his petition fails in any event to set forth a cause of action. The trial court reached that determination. On that point, the allegations of the petition are conclusive for it is alleged that, after plaintiff's conviction in the Common Pleas Court, he appealed to the Court of Appeals for Summit County. The petition not only states that the Court of Appeals affirmed the judgment, but that plaintiff thereupon served the sentence imposed, indicating he took no further steps to appeal from the judgment of affirmance of the Court of Appeals. It is apparent, in the absence of further appeal or reversal of the Court of Appeals by the Supreme Court, that the affirmance of the Court of Appeals of the conviction constituted a final adjudication of the guilt of plaintiff and, *ipso facto*, a finding that the defendants, as to their part therein, merely acted in the performance of their official duties. Plaintiff having failed to exhaust his remedies by appeal, he must be said to have acquiesced in the judgment against him and he cannot now question that judgment collaterally by the present proceedings.

In any respect, we know of no principle of law which would permit a guilty party to maintain an action for damages against arresting officials, judges who presided at the trial, the Ohio Pardon and Parole Board, which in its discretion failed to release him prior to the expiration of his sentence, or the Director of Public Welfare of Ohio. Both precedent and reason compel this conclusion.

An early case, in which a plaintiff who had been

convicted subsequently brought suit against the judge who had sentenced him, is *Hamond* v. *Howell* (England, 1677), 2 Mod. Rep., 218, 86 Eng. Rep. R., 1035. It was therein declared:

"An action will not lie against a judge for what he doth *judicially*, though erroneously."

Numerous other early cases in England reached a similar conclusion that where a judge acts judicially, no action will lie against him. See, for example, *Gwinne* v. *Fool* (1692), 2 Lutw., 935, 125 Eng. Rep. R., 522. The principle is so well accepted that English cases hold that a judge shall not be held civilly liable even for acts done maliciously and contrary to good faith but within his jurisdiction. In *Anderson* v. *Gorrie* (1895), 1 Queen's Bench Div., 668, Lord Esher explained the reasoning of the cases as follows:

"The ground alleged from the earliest times as that on which this rule rests is that if such an action would lie the judges would lose their independence * * * and independence of the judges is necessary for the administration of justice."

In this country, and in more recent times, the principle appears to be universally accepted that a judge shall not be civilly responsible for his official deeds while acting within his jurisdiction. For a discussion of the subject generally, see 30 American Jurisprudence, 755, "Judges," Section 43. The rule is said to rest upon considerations of public policy, and "to insure that judges will act on their own free, unbiased convictions, uninfluenced by any apprehensions of consequences."

A leading case in Ohio on the immunity of judges for their official acts is *Brinkman* v. *Drolesbaugh*, 97 Ohio St., 171, 119 N. E., 451, L. R. A. 1918F, 1132. That case likewise holds that the same public policy protects an administrative or executive officer, whether

constable, policeman, game warden, sheriff, or other authorized officer of the state whose duty it is, under the law, to serve the process of the court, in the event of subsequent claims arising from an imprisonment by virtue of a process prima facie regular.

More recent decisions of our Supreme Court, recognizing the principle, are *Stahl* v. *Currey,* 135 Ohio St., 253, 20 N. E. (2d), 529; and *Voll* v. *Steele,* 141 Ohio St., 293, 47 N. E. (2d), 991.

The principle is hallowed by age and tested by experience. The courts under our Anglo-American system of jurisprudence are the final repository of the freedoms of the individual citizen, the last best hope for freemen everywhere. The courts cannot function freely and impartially in the preservation of men's freedoms if, for personal consequences, they hesitate to declare the law as they find it, without fear or favor of the great or small. Where acting without jurisdiction or beyond their official duties, judges are, of course, accountable in the same manner as private citizens. They may likewise, for cause, be removed from public office by concurrent resolution of both houses of the General Assembly, if two-thirds of the members elected to each house concur therein, as provided by Section 17, Article IV of the Ohio Constitution. With this safeguard to the citizen, and within the limitations imposed by the Constitution and the laws of the land, courts need to be untrammeled in their decisions, not for the passing protection of the judge, but for the lasting protection of a free society. In the final analysis, the measure of freedom of a nation is its support of a free and independent judiciary, dedicated to uphold a government of laws, as distinguished from a government of men.

Since the arresting and prosecuting officers and the judicial authorities are not subject to account in the

instant case, it is apparent that the action fails also with respect to the other defendants, including the penitenitiary warden, the Director of Public Welfare, the members of the Pardon and Parole Commission, and the surety companies.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

SKEEL, P. J., and HURD, J., concur.

SKEEL, P. J., HURD and THOMPSON, JJ., of the Eighth Appellate District, sitting by designation in the Ninth Appellate District.