**Lillian BENCHIC, et al., Plaintiffs,**

**v.**

**CENTURY ENTERTAINMENT CORP., et al., Defendants.**

**In the Matter of CENTURY ENTERTAINMENT CORP., et al., Debtor.**

Adv. Nos. 3–81–0242, 3–81–0516.
Bankruptcy No. 3–81–04024.

United States Bankruptcy Court,
S.D. Ohio, W.D.

Dec. 7, 1982.

Larry Crowell, George Ledford, Englewood, Ohio, for debtor.

Ronald Burdge, Franklin, Ohio, for plaintiffs.

Marvin A. Sicherman, Cleveland, Ohio, for Westinghouse Credit Corp.

John W. Zieger, Columbus, Ohio, for Sun America Financial Corp.

Robert E. Tait, James M. Ball, Robert Werth, Columbus, Ohio, for Beneficial Finance of Kentucky, Beneficial Finance of Ohio, West Beneficial Finance Inc., Commonwealth Loan Co., and Capital Sav. & Loan Co.

Marshall C. Ruchman, Dayton, Ohio, for Thorp Credit, Inc.

William E. Shirk, Lakeview, Ohio, for Raymond Hite.

Herbert Ernst, Jr., Dayton, Ohio, Trustee.

## DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

This matter is before the Court for determination whether the Court possesses jurisdiction over the above-captioned adversarial proceedings, and, if found to exist, whether the Court should nevertheless abstain from exercising such jurisdiction. The combined proceedings are essentially identical proceedings, one a class action and the other an action of identical parties before the Court under principles of joinder. For elaborated facts, see this Court's opinion in *Benchic v. Century Entertainment Corp.,* 20 B.R. 126 (Bkrtcy.1982). In both actions, Plaintiffs allege that Defendants, including Debtor, are liable to Plaintiffs for violations of the "Truth in Lending" Act (in particular 15 U.S.C. §§ 1601, *et seq.* and Reg. Z § 226.-6(d) thereof); the Federal Trade Commission Act, 15 U.S.C. §§ 41, *et seq.,* and 16 C.F.R. §§ 429 and 433; and numerous state consumer protection statutes and common law claims.

Defendants Beneficial Finance Co. of Kentucky, Beneficial Finance Co. of Ohio, and West Beneficial Finance, Inc. (hereinafter "the Beneficial Defendants") contend that this Court lacks jurisdiction in light of the recent United States Supreme Court opinion in *Northern Pipeline Construction Co. v. Marathon Pipeline Construction Co.,* (hereinafter, *Northern Pipeline* ), —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598, 9 B.C.D. 67, 6 C.B.C.2d 785, B.L.D. ¶ 68,698 (1982). Defendants emphasize that the instant proceeding involves claims, resolution of which would "necessarily involve the exercise of 'extended' jurisdiction which was granted to this Court for the first time by the enactment of 28 U.S.C. § 1471."

Plaintiffs respond that this Court should proceed with "business as usual" until the effective date of the opinion, presently stayed until 24 December 1982 to "afford Congress an opportunity to reconstitute the bankruptcy courts or to adopt other valid means of adjudication, without impairing the interim administration of the bankruptcy laws." *Northern Pipeline, supra,* 102 S.Ct. at 2880, 6 C.B.C.2d at 808; and see News and Comment B.D.C. A85. Plaintiffs argue that, "For this Court to act at all, [by declining jurisdiction] at this time, would be improper, if not impossible [; . . . and] the obviously wiser course is to wait and see."

The Beneficial Defendants also argue, in the alternative, that the Court should abstain from consideration of the instant adversarial proceedings. The Beneficial Defendants stress that the bankruptcy case, instituted on 19 December 1980 as a reorganization proceeding under 11 U.S.C. Chapter 11, was converted on 12 April 1982 to a liquidation proceeding under 11 U.S.C. Chapter 7 because there is no possibility of a viable Plan of Reorganization. In their own words,

Given the posture of the Century estate, it cannot now be seriously contended that Century is a *real* party in interest in the adversary proceeding. Nor can it be seriously contended that the adversary proceeding will have any real impact—other than the causing of interminable delay—on the liquidation and termination of the estate. Instead, the adversary has now boiled down to a potential litigation of major proportion between nonbankrupt plaintiffs and defendants on non-bankruptcy issues. Under these circumstances abstention is clearly appropriate.

Moreover, the *Northern Pipeline* decision which, at the very least, casts serious doubt upon this Court's present and *future* ability to hear this matter, adds additional support for abstention at this time [Footnote and citations omitted.]

Plaintiffs respond that Plaintiffs believe that Debtor does in fact possess significant assets, and that retention of jurisdiction would in fact expedite the matters raised in the adversary proceedings, and concomitantly the case itself. Plaintiffs further posit that the proceedings would be neither "unmanageable" nor burdensome on the bankruptcy administration.

The Court notes that no Defendants (including Debtor) other than "the Beneficial Defendants" have submitted any arguments on the issues herein.

I

The threshold question before the Court is whether the *ratio decidendi* in the *Northern Pipeline* decision divests this Court of subject matter jurisdiction. It is the determination of the Court that such conclusion is not demonstrated on the facts of this case.

■ Bankruptcy Judges do not presently possess the protections required by Article III, Section 1 of the United States Constitution for judges presiding over cases and controversies ennumerated in Article III, Section 2. 28 U.S.C. § 1471(c) nevertheless provides that "the bankruptcy court for the district in which a case under title 11 is commenced shall exercise all of the jurisdiction conferred by this Section on the district courts." 28 U.S.C. § 1471(b) vests the district courts with "original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11," thereby "vesting" the bankruptcy courts with a broad grant of jurisdiction, and in turn eliminating the distinction between summary and plenary jurisdiction which controlled the Bankruptcy Courts' jurisdiction under the former Bankruptcy Act.

In the *Northern Pipeline* decision, a majority of the Justices concluded that the resulting vesting of jurisdiction in non-Article III Judges over "the stuff of the traditional actions at common law tried by the courts at Westminster in 1789" was violative of Article III, Section 1 of the United States Constitution. *Northern Pipeline, supra,* 102 S.Ct. at 2881, 6 C.B.C.2d at 809, (Rehnquist, J., concurring). The precise scope and practical ramifications of the opinion are unclear; though even a restrictive reading could admit the potentially sweeping admonishment that a bankruptcy judge should not preside over a " . . . lawsuit . . . before the Bankruptcy Court only because the plaintiff [and presumably any party] has previously filed a petition for reorganization in that Court." *Northern Pipeline, supra,* 102 S.Ct. at 2881, 6 C.B.C.2d at 809 (Rehnquist, J., concurring); See also, *Annotation: Supreme Court's Views as to Civil Liability of Judges,* 55 L.Ed.2d 850.

■ It is axiomatic that the Court is under a duty to inquire *sua sponte* into the jurisdiction of all matters before it, and

that the rendering of a judgment is itself tacit assertion of jurisdiction by the Court. The specific purpose of the Supreme Court's stay of its own judgment under 24 December 1982, however, was to relieve the Bankruptcy Courts of such duty to make inquiry beyond the determination that a pending matter is within the jurisdictional grant of 28 U.S.C. § 1471. Further, it is not clear that the *Northern Pipeline* rationale would effect a divestiture of the jurisdictional grant in 28 U.S.C. § 1471 *in toto,* or "merely" invalidate the use of the Bankruptcy Courts as a trial forum as contemplated in 28 U.S.C. § 1471(c).

■ The matters presented to the Court *instanter* were pending prior to the rendering of the *Northern Pipeline* decision. In addition, the precise posture of the issues *sub judice,* a combination of federal statutory, and state statutory and common law causes of action, is unclear vis-à-vis the *Northern Pipeline ratio decidendi,* which could be interpreted as inapplicable to questions deemed ancillary to exclusively bankruptcy matters. Further, the adversarial proceedings, as originally presented, posed considerable implications upon Debtor's bankruptcy estate.

It is therefore the determination of the Court that the Court, as directed by the Supreme Court, should proceed with all matters of this nature, reserving the jurisdictional questions raised within the *Northern Pipeline* decision until the stay of the judgment therein is lifted. B.R.P. 712 [F.R. C.P. 12(d) ]; *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978).

## II

The concerns regarding abstention under 28 U.S.C. § 1471(d), however, are separable from jurisdictional questions. 28 U.S.C. § 1471(d) gives broad discretion to the Court to abstain if "in the interest of justice."

■ Disregarding the concerns raised about the *Northern Pipeline* decision, there is no doubt that class actions may be properly entertained by a bankruptcy court.

B.R.P. 723 [F.R.C.P. 23]; and see generally, *In re Rea Express, Inc.,* 10 B.R. 812 (Bkrtcy. S.D.N.Y.1981); *In re Woodmoor Corp.,* 4 B.R. 186 (Bkrtcy.D.Colo.1980). In fact, under certain circumstances, class actions may prove extremely expeditious in the context of bankruptcy proceedings, as intimated in, for example, the suggested use of "class proofs of claims." *Matter of GAC Corp.,* 6 B.R. 981, 988 (D.C.S.D.Fla.1980). A bankruptcy court should, nevertheless, act cautiously before proceeding with a class action, especially one in which the debtor is the sole party directly involved in bankruptcy proceedings, i.e. in which numerous parties are subjected to this Court's jurisdiction because of the bankruptcy filing of a single party in the class action, perhaps not even a vital participant in the litigation.

■ Before a bankruptcy court proceeds with disposition of a class action proceeding, it should be demonstrated that the class action bears some direct effect on the case, such that bankruptcy adjudication is in the best interests of creditors of the estate. In the case at bar, the Court conditionally certified the instant class action within Adversary Proceeding No. 3–81–0242 because it appeared (though admittedly with some uncertainty) that resolution of the class action claim would have considerable impact with Debtor's estate, and possibly upon the viability of Debtor's Plan of Reorganization. Debtor's case, however, has subsequently been converted to a liquidation case, which apparently is capable of routine administration.

Although Debtor's estate may, nevertheless, be affected to a minor degree by the ultimate outcome of the instant litigation, the Court perceives that such litigation no longer poses an impediment to bankruptcy administration. To the contrary, retention of the instant litigation would appear not to serve creditors' interests, but instead serve merely as an imposition on administration of the estate.

We direct attention of counsel to this Court's decision in the matter of *Ebrights Refrigeration Equipment, Inc.,* 13 B.R. 546, 4 C.B.C.2d 1543 (Bkrtcy.1981), (which is

here followed) in delineating in detail the rationale and nexus to be pursued in the exercise of jurisdiction or abstention regarding state law claims. See particularly items (1), (4), (5), and (6) on pages 548–549.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1471(d), the Court should, and hereby does, ABSTAIN from the instant adversarial proceedings.