John R. BUTZ, Trustee In
Bankruptcy, Plaintiff,

v.

SOCIETY NATIONAL BANK OF THE
MIAMI VALLEY, Defendant.

In the Matter of Robert Leon CLARK,
Judy Denise Clark, Debtors.

John R. BUTZ, Trustee in Bankruptcy,
Plaintiff,

v.

SOCIETY NATIONAL BANK OF THE
MIAMI VALLEY, Defendant.

In the Matter of Richard S. LATHAM,
aka Richard Sylvester Latham, Shirley
I. Latham, aka Shirley Iline Latham,
Debtors.

Bankruptcy Nos. 3–82–00546, 3–82–01281.
Adv. Nos. 3–82–0571, 3–82–0572.

United States Bankruptcy Court,
S.D. Ohio, W.D.

May 9, 1983.

John R. Butz, Springfield, Ohio, Trustee/plaintiff.

Barry P. Reich, Springfield, Ohio, for defendant.

Carl E. Juergens, Springfield, Ohio, for Clark.

Alex Andreoff, Springfield, Ohio, for Latham.

## FINDINGS, CONCLUSIONS, PROPOSED ORDER, AND CERTIFICATION OF NEED FOR IMMEDIATE REVIEW BY THE DISTRICT JUDGE

CHARLES A. ANDERSON, Bankruptcy Judge.

### PRELIMINARY DISCUSSION OF PROCEDURE

These matters, as two of numerous similarly delayed cases, are before the Court *sua sponte* for determination of the proper procedure for the handling of such cases under the "Emergency Model Rule" for "Operation of the Bankruptcy Court System" (hereinafter the Rule or the Model Rule). See the Rule reprinted in *White Motor Corp. v. Citibank, N.A.,* 704 F.2d 254, 10 B.C.D. 392 (6 Cir., 1983); and also reprinted in this Court's opinion in *Winters National Bank and Trust Company of Dayton v. Schear Group (Matter of Schear Realty and Investment Co., Inc.),* 25 B.R. 463, 465, 9 B.C.D. 1210, B.L.D. ¶ 68,949 (Bkrtcy. Ohio 1982), hereinafter *Schear Realty.* In *Schear Realty,* this Court expressed concern and doubt regarding the validity and prudence of the Model Rule's contemplated exercise by this Court of "fictional" jurisdiction over causes of action derivative from the common law or state statutory law. See *Schear Realty,* and discussion therein which is incorporated herein for purposes of brevity. In *White Motor,* the Sixth Circuit explicitly disagreed with the concerns expressed in *Schear Realty,* and further, in effect, declared authority to the bankruptcy judges to proceed with common law and state causes of action in accordance with the provisions of the Rule in the manner elaborated within the *White Motor* opinion.

■ The implied mandate to exercise such authority, however, places this Court in an uncomfortable position of having to reconcile the Model Rule with conflicting Rules enacted by the United States Supreme Court. 28 U.S.C. § 2075 grants to the Supreme Court general rule-making powers in cases under Title 11 in the manner prescribed as follows:

The Supreme Court shall have the power to prescribe by general rules, the forms of process, writs, pleadings and motions, and the practice and procedure in cases under Title 11.

Such rules shall not abridge, enlarge or modify any substantive right.

Such rules shall not take effect until they have been reported to Congress by the Chief Justice at or after the beginning of a regular session thereof but not later than the first day of May and until the expiration of ninety days after they have been thus reported.

The present Bankruptcy Rules (hereinafter the Bankruptcy Rules or the Supreme Court Rules) became effective on 24 April 1973 pursuant to the Supreme Court's rule-making powers granted within 28 U.S.C. § 2075, and in compliance with the reporting requirement therein. See the Supreme Court Bankruptcy Rules reprinted at 411 U.S. 991–1103. See also additional rule amendments and additions at 415 U.S. 1004–1053, and 421 U.S. 1027–1074, and 1089–1122. In addition 28 U.S.C. § 2075 further provides that, "Such rules shall not abridge, enlarge, or modify any substantive right," thereby codifying the general rule that a court may not extend or limit jurisdiction by rule. See Rule 82 of the Federal Rules of Civil Procedure; Rule 928 of the Bankruptcy Rules of Procedure; *United States v. Sherwood,* 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941); *Abbott v. Brown,* 241 U.S. 606, 36 S.Ct. 689, 60 L.Ed. 1199 (1916); *Matter of Mobil Steel Co.,* 563 F.2d 692 (5th Cir.1977); and *American Brake Shoe and Foundry Co. v. Interborough Rapid Transit Co.,* 1 F.Supp. 820 (D.N.Y.1932).

Supreme Court Rule 927 provides, in pertinent part, that:

Each district court by action of a majority of the judges thereof may from time to time make and amend rules governing practice and procedure under [title 11 of the United States Code] *not inconsistent with these rules....* In all cases not provided for by rule, the district court may regulate its practice in any manner not inconsistent with these rules. [Emphasis added.]

This specific prohibition that local district court rules may not be inconsistent with the Supreme Court Rules is impliedly incorporated into the Model Rule itself, which provides in paragraph (a), "The purpose of this rule is to supplement existing law and rules . . . ."

Supreme Court Rules 802 and 803 contemplate that, unless appealed, all judgments and orders issued by the bankruptcy judges shall be final. The finality of a bankruptcy judge's findings is further emphasized by Supreme Court Rules 752(a), 801 and 914, all of which provide that findings of fact by bankruptcy judges are only reversible if "clearly erroneous." See also, Norton and Lieb, "The Aftermath of Northern Pipeline; Bankruptcy Jurisdiction under Local Court Rule," Supplement to *Norton Bankruptcy Law and Practice* at 51–54 (1983). The Model Rule appears inconsistent with Supreme Court Rules 752(a), 803, 810 and 814 because the Model Rule provides that district judges shall review all bankruptcy judges' orders and judgments if issued in a related proceeding, regardless whether an appeal was perfected, and further that the district judge ". . . need give no deference to the findings of the bankruptcy judge" which are "proposed" rather than formally entered into the record. Model Rule (e)(2)(B) and (3).

Furthermore, the requirement in the Model Rule that the district court automatically conduct a compulsory "review" (with the discretion to proceed *de novo*) apparently uproots the appellate process codified by Congress in 28 U.S.C. § 160(a), 1293(b), 1334 and 1482, as incorporated into Supreme Court Rule 801 and all Rules in Part VIII of the "Interim Rules of Bankruptcy Procedure," effective 1 February 1980 in this District.

In essence, the procedure adopted by the Model Rule for "related proceedings" compels initial review by a district judge, whose review within his discretion may be *de novo,* thereby obviating the district courts' appellate functions as contemplated within Supreme Court Rules 752(a), 810 and 914, and also thereby extinguishing the option of direct appeal to either the Circuit Courts of Appeal or one of the Bankruptcy Appellate Panels (where applicable).

The above concerns are accentuated by the fact that on 25 April 1983 the United States Supreme Court issued new Bankruptcy Rules pursuant to 28 U.S.C. § 2075 which are structured entirely around a procedural system contemplating only appellate functions by the district courts. See Part VIII of the "Bankruptcy Rules," (hereinafter the proposed Rules), reprinted at 51 U.S.L.W. 4461–4490, 4481–4485. The proposed Bankruptcy Rules take effect 1 August 1983 and continue the established procedure wherein the bankruptcy courts are the sole trial forum for all bankruptcy related matters. See Parts VII and VIII of the proposed Rules, 51 U.S.L.W. at 4478–4484. In addition, the proposed Supreme Court Rules specifically provide that findings by a bankruptcy judge may only be reversed by a district judge if deemed "clearly erroneous." See proposed Rules 7052 and 9014.

These proposed Rules are also contrary to the Model Rule in numerous respects. Most significantly, Model Rule (c)(2) provides that, within the discretion of either the district judge or any litigant, the district court may function as a trial forum for any bankruptcy matter. This dual trial forum option would appear wholly inconsistent with Parts VII and VIII of either the current or proposed Rules. See this Court's opinion in *Benchic v. Century Entertainment, (Matter of Century Entertainment),* 25 B.R. 502 (December 7, 1982), hereinafter *Century Entertainment.* Also noteworthy, proposed Rules 9015 and 9020 provide for jury trials and criminal contempt proceedings, apparently in direct contravention to Model Rule paragraphs (d)(1)(D) and (B) respectively.

Even though in this district litigation involving "related proceedings" has been directly (and indirectly) stalemated because attorneys have been awaiting Congressional clarification of the proper forum to exercise jurisdiction, the instant Complaints are actions for money judgments initiated by the

Trustee of the respective Debtors' estates, and the rights of the litigants should by clarified without further compounding of the expenses of litigation.[1] The instant proceedings were consolidated because they involve identical issues of state law; namely, the proper application of a state law penalty provision to similarly conducted sales of Debtors' property repossessed and sold by Defendant Bank allegedly in violation of Ohio Revised Code Sections 1317.16 and 1309.47. The Court notes that, but for the respective Debtors' filings of Petitions in bankruptcy, the district courts apparently would not have jurisdiction over these proceedings under traditional diversity or federal question jurisdiction, or otherwise. Note Model Rule (d)(3)(A).

These Complaints were both filed on 26 August 1982, prior to expiration of the United States Supreme Court's stay of its opinion in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* (hereinafter *Northern Pipeline* ), —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598, 9 B.C.D. 67, 6 C.B.C.2d 785, B.L.D. ¶ 68,698, issued 28 June 1982, but stayed until 4 October 1982 and again until 24 December 1982. In the *Northern Pipeline* decision a majority of Justices held that the grant in 28 U.S.C. § 1471(c) of jurisdiction to bankruptcy courts of "the stuff of the traditional actions at common law" was violative of Article III of the United States Constitution. *Northern Pipeline, supra,* 102 S.Ct. at 2881, 6 C.B.C.2d at 809 (Rehnquist, J., concurring). See also this Court's discussion in *Schear Realty* and *Century Entertainment.* Only a plurality of Justices deciding *Northern Pipeline,* however, appeared to find that, absent Congressional action, such jurisdiction divested from the bankruptcy courts would not vest in district courts of which the bankruptcy courts are "adjunct." 28 U.S.C. § 151(a); *Northern Pipeline,* 102 S.Ct. at 2880, n. 40, 6 C.B.C.2d at 807, n. 40 (hereinafter Footnote 40). This plurality view is presented in Footnote 40, as follows:

It is clear that, at the least the new bankruptcy judges cannot constitutionally be vested with jurisdiction to decide this state-law contract claim against Marathon. As part of a comprehensive restructuring of the bankruptcy laws, Congress has vested jurisdiction over this and all matters related to cases under title 11 in a single non-Art III court, and has done so pursuant to a single statutory grant of jurisdiction. In these circumstances we cannot conclude that if Congress were aware that the grant of jurisdiction could not constitutionally encompass this and similar claims, it would simply remove the jurisdiction of the bankruptcy court over these matters, leaving the jurisdictional provision and adjudicatory structure intact with respect to other types of claims, and thus subject to Art. III constitutional challenge on a claim-by-claim basis. Indeed, we note that one of the express purposes of the Act was to ensure adjudication of all claims in a single forum and to avoid the delay and expense of jurisdictional disputes. See H.R.Rep. No. 95–595, *supra,* p. 43–48; S.Rep. No. 95–989, p. 17 (1978). Nor can we assume, as THE CHIEF JUSTICE suggests, that Congress' choice would be to have this case "routed to the United States district court of which the bankruptcy court is an adjunct." We think that it is for Congress to determine the proper manner of restructuring the Bankruptcy Act of 1978 to conform to the requirements of Art. III, in the way that will best effectuate the legislative purpose.

The two concurring Justices declined to address the broad question of the constitutionality of 28 U.S.C. § 1471 *in toto,* though strong argument exists to indicate that the rationale of the concurrence leads to the conclusion that Footnote 40 represents the possible majority view regarding the jurisdiction of the district courts under 28 U.S.C. § 1471. See *Rhodes v. Stewart,* (hereinafter *Rhodes* ), 705 F.2d 159 (6th Cir.1983), as discussed below, and see citation therein;

---

1. See however, Countryman, "Emergency Rule Compounds Emergency," 57 Bankr.L.J. 1

(1983), indicating that even if the Model Rule is valid it is unworkable.

See also *Schear Realty* and the scholarly and thoughtful views presented by Countryman, "Emergency Rule Compounds Emergency," 57 Bankr.L.J. 1 (1983); Vihon, "Delegation of Authority and the Model Rule: The Continuing Saga of Northern Pipeline," 88 Commercial L.J. 64 (1983); and Norton and Lieb, "The Aftermath of Northern Pipeline: Bankruptcy Jurisdiction under Local Court Rule," supplement to *Norton Bankruptcy Law and Practice* (1983).

On 10 January 1983, this Court therefore issued an Order informing the instant litigants, as follows:

As elaborated in this Court's opinion in *The Schear Realty and Investment Co., Inc.*, jurisdiction over this type of litigation is uncertain.

To avoid undue prejudice to the litigants by further delay, the Court hereby informs the litigants that, subject to further order of the Court, no decision will be rendered in this case until Congress enacts remedial legislation as necessitated by the *Northern Pipeline* decision. The Court, however, will proceed to decision if the parties either, to the extent permitted by the Constitution, waive, by stipulation, all jurisdictional questions under *Northern Pipeline* or the *Order of the Judicial Council for the Sixth Circuit* and the *Order of the District Court of the Southern District of Ohio* pursuant thereto, or move to dismiss on the basis of a lack of jurisdiction for a determination by the Bankruptcy Court.

In response to this Order, on 17 January 1983, the parties, by joint indorsement of counsel, then filed a "Stipulation," whereby:

In response to this Court's order entered January 10, 1983 the parties . . . waive[d] all jurisdictional questions arising out of the *Northern Pipeline* case, *Order of the Judicial Court Council for the Sixth Circuit* and *Order of the District Court of the Southern District of Ohio* and hereby consent to this Court proceeding to decision on the matter submitted for decision previously. [Note Bankruptcy Rule 915.]

On 8 March 1983, this Court then issued a "Declaratory Decision" wherein the Court concluded that the Trustee's prayers should be granted. The decision, however, was not journalized. Instead, the Court advised, as follows:

A judgment entry journalizing the decision herein will be held under advisement pending resolution of the jurisdictional questions pertaining to Bankruptcy Court judgments until the Congress by legislation confers jurisdiction on the Bankruptcy Courts which can bear constitutional muster. If the litigants herein can reach a satisfactory settlement agreement in the interim based upon the *ratio decidendi* herein, such agreement should be reduced to writing and submitted to the Court for filing in the adversarial files.

To date, no further filings have been made by the parties in either adversarial proceeding, and this Court has made no further determination of record whether jurisdiction lies over the instant proceedings.

As aforementioned, on 1 April 1983, the Sixth Circuit issued its decision in *White Motor* wherein the Sixth Circuit explicitly disagreed with *Schear Realty*. *White Motor*, 704 F.2d at 258, 10 B.C.D. at 396. The opinion of April 1, based its reasoning on the conclusion that, ". . . under [28 U.S.C.] §§ 1471(a) and (b) and the old § 1334, the district courts may adjudicate bankruptcy proceedings filed after December 24, 1982." In *White Motor*, the Sixth Circuit further found that the Model Rule was properly adopted by the district courts through the district courts' local rule-making powers, and further that the Rule's automatic referral of factfinding and adjudicative duties in Model Rule (d)(3)(B) is neither in conflict with the *Northern Pipeline* decision, nor violative of Article III of the United States Constitution. The Court notes that the *White Motor* opinion does not address or provide a basis to resolve the apparent conflict between the Model Rule and the Rules of Bankruptcy Procedure issued by the United States Supreme Court.

Subsequently, on 11 April 1983, the Sixth Circuit issued its opinion in *Rhodes*. In

*Rhodes,* the Sixth Circuit, apparently as *dicta,* addressed the question of the severability of the unconstitutional grant of Article III jurisdiction in 28 U.S.C. § 1471(c) from the remainder of the jurisdictional grant in 28 U.S.C. § 1471. In its April 11 opinion, the Sixth Circuit determined that, "[A] plurality of six justices concluded that the jurisdictional grant of [28 U.S.C.] § 1471 was unconstitutional *in toto* and could not be redeemed through division or severance of offending exercises of jurisdiction." In so holding, the Sixth Circuit cited three decisions. Two of these cited opinions appear to elaborate that the reasoning of a majority of the Justices who decided *Northern Pipeline* concluded the Northern Pipeline rationale divests even the district courts of their "nonseverable" jurisdiction under 28 U.S.C. § 1471(a) and (b). See (as cited in *Rhodes,* at 160), *In re Cumberland Enterprises, Inc.,* 22 B.R. 626, 630–631 (Bkrtcy.M.D.Tenn.1982), holding that, "This court is persuaded by ... a reading of *Northern Pipeline* that six justices of the Supreme Court concurred in the judgment that 28 U.S.C. § 1471 (West Supp.1982) is unconstitutional in its entirety"; and *In re Otero Mills, Inc.,* 21 B.R. 645, 647 (Bkrtcy.D. N.M.1982), reasoning that, upon lifting of the stay of Northern Pipeline, "... the unavoidable effect would be that no court presently existing could administer the bankruptcy laws." The third cited opinion, *In re Cherry Pond Coal Company,* 21 B.R. 592, 593 (S.D.W.Va.1982), appears only to question whether the bankruptcy courts' traditional jurisdiction granted through 28 U.S.C. § 1471(c) could be "severed" from the expanded jurisdiction of related matters also granted through 28 U.S.C. § 1471(c). In *Cherry Pond,* the Bankruptcy Court concluded that the *Northern Pipeline* decision divested the bankruptcy courts of any jurisdiction granted by 28 U.S.C. § 1471(c) *in toto,* without referring to the possible "nonseverable" divestiture of the jurisdictional grant in 28 U.S.C. § 1471(a) and (b) to the district courts.

In light of the implied direction in *White Motor* to proceed under Model Rule (d)(3)(B), this matter is now before the Court for journalizing an appropriate "proposed judgment or order" to supplement the Court's Declaratory Decision of 8 March 1983. In this regard, the Court notes that the rendering of a judgment or final order is tantamount to a determination that jurisdiction exists, unless such order proposes dismissal for lack of jurisdiction. See generally, 46 Am.Jur.2d Judgments § 23.

## FINDINGS, CONCLUSIONS, AND PROPOSED JUDGMENT

The instant cases are "related proceedings" under 28 U.S.C. § 1471(b) and as defined in Model Rule (d)(3)(A). Specifically, the Court notes that the instant cases involve only Ohio litigants and only questions of Ohio law. Citing the language of Rule (d)(3)(A), "in the absence of a petition in bankruptcy," these matters "could have been brought [only] in state court."

28 U.S.C. § 1334 provides that,

The district courts shall have original jurisdiction, exclusive of the courts of the United States, of all matters and proceedings in bankruptcy.

In *White Motor,* the Sixth Circuit specifically determined that 28 U.S.C. § 1334 has continued vitality despite either the subsequent enactment of 28 U.S.C. § 1471 or the opinions in the *Northern Pipeline* decision. In the words of the Sixth Circuit,

Even if we were to accept the view that Congress did not intend that § 1334 continue in force simultaneously with § 1471, under long-standing principles of statutory construction, § 1334 is "revived" by the invalidation of the new § 1471. It has long been held that a statute which is unconstitutional does not repeal a prior statute on the subject when a contrary construction would create a void in the law which the legislative body did not intend. The prior statute is "revived" to avoid a chaotic hiatus in the law. [Citation omitted.] *White Motor,* 704 F.2d at 261, 10 B.C.D. at 398.

The "revival" of 28 U.S.C. § 1334 in *White Motor* is apparently intended to provide an alternate basis for district court jurisdiction

if the Supreme Court clarifies that its opinion in *Northern Pipeline* leads to the conclusion that 28 U.S.C. § 1471 is invalidated *in toto*.

28 U.S.C. § 1334, however, is not pertinent to typical "related proceedings" under 28 U.S.C. § 1471(b) and as defined in Model Rule (d)(3)(A). See 1 *Collier on Bankruptcy* Chapter 1 (15th Ed.1981). The "revival" of 28 U.S.C. § 1334 does not historically grant the district courts jurisdiction over the instant "related" proceeding since the instant proceeding involves "plenary" jurisdiction traditionally beyond the scope of the district courts and thus not traditionally capable of reference to a referee (or to a bankruptcy judge as an "adjunct" judge). See discussion in *Northern Pipeline*, 102 S.Ct. at 2862 and 2863, 6 C.B.C.2d at 786 and 787. In this context, the Court notes that "revival" of 28 U.S.C. § 1334 arguably "revives" the vitality of Bankruptcy Rule 915 which provides that litigants may consent to bankruptcy court adjudication of plenary matters. Although this rule was superceded by 28 U.S.C. § 1471(b), and is therefore presumably inapplicable in light of *White Motor,* the Court specifically notes that any application that Rule 915 may have in a present context would likely be imprudent in light of the rationale of the Supreme Court's opinion in *Northern Pipeline,* and in particular the plurality's admonishment that, " . . . [the referee's] functions, which represent the culmination of years of gradual expansion of the power and authority of the referee, have never been explicitly endorsed by this Court." *Northern Pipeline,* 102 S.Ct. at 2876, n. 31, 6 C.B.C.2d at 802, n. 31, citation omitted.

If jurisdiction over the instant matters exists in a bankruptcy forum, such jurisdiction is thus derivative only from 28 U.S.C. § 1471(b). The nature of jurisdiction under 28 U.S.C. § 1471(b) is somewhat complicated by the Sixth Circuit's apparent conflicting decisions regarding the severability of § 1471(a) and (b) from (c). In *White Motor,* the Sixth Circuit Court of Appeals un-

equivocally posited that 28 U.S.C. § 1471(a) and (b) are "severable" from (c) insofar as the rationale of the *Northern Pipeline* decision is concerned.[2] In *Rhodes,* the Sixth Circuit Court of Appeals subsequently determined that "the jurisdictional grant of § 1471 was unconstitutional *in toto* and could not be redeemed through division or severance of offending exercises of jurisdiction." *Rhodes,* at 160.

It is the opinion of this Court that the Sixth Circuit's views expressed in *White Motor* should guide this Court in its determination whether the District Court possesses jurisdiction over the instant Complaints. Although the *Rhodes* opinion is unclear whether its discussion of severability is limited to the nonseverability of the unconstitutional grant to bankruptcy courts of jurisdiction over Article III matters from the jurisdictional grant to *bankruptcy courts in toto,* the Court in *Rhodes,* by way of footnote, limited the scope of the decision by indicating that the opinion in *Rhodes* " . . . does not address the legal consequences of *Northern Pipeline. . . ." Rhodes,* at 161, n. 1. This disclaimer would appear to indicate the discussion in *Rhodes* is intended to be limited only to that particular type of case without any *stare decisis* implication *instanter.* Note 20 Am.Jur.2d Courts § 232, "Overruling by implication." Further, it appears that the discussion of severability in *Rhodes* could be interpreted as *dicta* with thus only limited impact upon the Sixth Circuit Court's previous rationale applied when addressing the precise issue in question. Note again, 20 Am.Jur.2d Courts § 232, "Overruling by implication."

■ The threshold question in any court litigation is whether that Court possesses jurisdiction. In this case, this Court is, in essence, presented with the question of the scope of this Court's "jurisdiction" to adjudicate a case within only the District Court's jurisdiction. See *White Motor* and *Rhodes.* Essentially, this Court is requested to resolve an Article III controversy as a forum created by local district court rule

2. As discussed above, the severability of paragraph (a) and (b) was not considered by the *White Motor* Court for purposes of "revival" of 28 U.S.C. § 1334.

adopted without Congressional input or approval, and despite the lack of any residual valid statutory authority granting this Court the authority to exercise adjudicative functions over such Article III matters. Distinguish *U.S. v. Raddatz,* 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980), and note Countryman, *supra,* and Norton and Lieb, *supra.*[3] This Court notes that a court may not extend or limit jurisdiction by rule. See Rule 82 of the Federal Rules of Civil Procedure; Rule 928 of the Bankruptcy Rules of Procedure; *United States v. Sherwood, supra; Abbott v. Brown, supra;* and *American Brake Shoe and Foundry Co., supra.*

An appellate court has the inherent power in extreme circumstances to permit a lower court to proceed without valid jurisdiction. *Northern Pipeline.* As stated in this Court's opinion in *Century Entertainment,* 25 B.R. at 504 and 505:

It is axiomatic that the Court is under a duty to inquire *sua sponte* into the jurisdiction of all matters before it, and that the rendering of a judgment is itself tacit assertion of jurisdiction by the Court. The specific purpose of the Supreme Court's stay of its own judgment until 24 December 1982, however, was to relieve the Bankruptcy Courts of such duty to make inquiry beyond the determination that a pending matter is within the jurisdictional grant of 28 U.S.C. § 1471. Further, it is not clear that the *Northern Pipeline* rationale would effect a divestiture of the jurisdictional grant in 28 U.S.C. § 1471 *in toto,* or "merely" invalidate the use of the Bankruptcy Courts as a trial forum as contemplated in 28 U.S.C. § 1471(c).

It is the opinion of this Court that the Sixth Circuit's determination in *White Motor* that the District Court validly referred by rule its jurisdiction to proceed under 28 U.S.C. § 1471(b) similarly relieves this Court of the duty to inquire into jurisdiction beyond the determination that a matter falls within the jurisdictional grant of 28 U.S.C. § 1471(b), and further immunizes (or arguably indemnifies) this Court from any allegation of personal liability resulting from actions taken by this Court under the implied mandate to proceed under the Model Rule. Note *Schear Realty,* and see also *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978), and *In re Tippa-hans Enterprises, Inc. t/a Franklin Electrical Supply,* 27 B.R. 780, 10 B.C.D. 85 (Bkrtcy.W.D.Va.1983).[4] Further, it is argu-

3. In fact, pending resolution of the bankruptcy courts' jurisdiction by the United States Supreme Court, it could arguably be malpractice not to preserve a client's appellate right to object to jurisdiction by appeal of a "close call." The possibility of large numbers of cases pending on appellate court dockets, whether *bona fide* or merely for tactical delay, creates the possibility of a mass invalidation of judgments by United States Supreme Court. This possibility should make state forums with concurrent jurisdiction the more appealing forum in many instances, particularly if the validity of a property title is involved, since use of the state court forums would obviate the possibility of either collateral or direct attack of the present jurisdictional basis. In fact, such option may warrant the exercise of abstention in some matters since abstention in the bankruptcy context is statutory rather than doctrinal and thus considerably more discretionary. 11 U.S.C. §§ 105 and 305; 28 U.S.C. § 1471(d).

4. In this regard the Court notes that it would appear that state courts possess exclusive jurisdiction over suits in which federal judges are sued individually and personally for liability allegedly resulting exclusively from state law causes of action (e.g. negligence, slander or defamation). *Brinkman v. Drolesbaugh,* 97 Ohio St. 171, 119 N.E. 451 (1918); *Truesdell v. Combs,* 33 Ohio St. 186 (1877). As stated in *Maxey v. Gather,* 94 Ohio App. 115, 121, 114 N.E.2d 607 (Ct.App.Summit 1952), "where acting without jurisdiction or beyond their official duties, judges are, of course, accountable in same manner as private citizens." The concern that state courts may conclude differently than the Sixth Circuit about the validity of the bankruptcy or district courts' jurisdiction in a suit alleging personal liability of a bankruptcy or district judge, or "merely" in the context of a collateral attack of a judgment entered against a nonappearing party, however, would appear to be largely theoretical in light of a district judge's discretion to remove the case for determination of the state issue in a federal forum and also the general injunctive powers of the district court. 28 U.S.C. §§ 1442(a) and 2283. The "theoretical" problem of collateral attack would rapidly become very practical, nevertheless, if the United States Supreme Court were ultimately to conclude that the

able that, under the Model Rule, a finding of jurisdiction is only completed by the journalizing of a final order by the district judge, thereby absolving the bankruptcy judge entirely since he is merely "recommending," as opposed to "adjudicating." But see detailed and convincing discussion in *In re Tip-pa-hans Enterprises, Inc., supra,* 27 B.R. at 785, 10 B.C.D. at 88. In this regard, this Court notes that Interim Rule (e)(2)(B) and *White Motor* appear to have "overruled" the Supreme Court Rules 752(a), 810 and 914 of the Bankruptcy Rules of Procedure.

This Court, is constrained to follow the teaching of the Sixth Circuit Court of Appeals that jurisdiction over this matter is duly vested in the District Court by virtue of the District Court's jurisdiction over "related matters" granted in 28 U.S.C. § 1471(b) and as discussed in *White Motor.* The Court notes that both cases involve litigants who are debtors with petitions filed in this district, and that the causes of action appear to constitute property of the respective estates. 11 U.S.C. §§ 101(4) and (12) and 541, and 28 U.S.C. § 1471(b) and (e). Note also 28 U.S.C. § 1473.

The present function and duty of this Court, therefore, is to proceed in the role of a "quasi-master commissioner" under Model Rule (d)(3)(B). Note Rule 53 of the Federal Rules of Civil Procedure. Therefore, the Court hereby incorporates by reference the Declaratory Decision of 8 March 1983 to serve as this Court's "findings and conclusions," as required by Model Rule (d)(3)(B). In addition, this Court proposes that an Order be entered pursuant to Model Rule (e)(2)(B) granting Plaintiff's prayers as requested.

IT IS HEREBY PROPOSED that Plaintiff-Trustee be granted judgments by the district court in both instant Adversarial Proceedings, numbered 3–82–0571 and 3–82–0572, to be calculated under the terms of Ohio Revised Code Section 1309.50.

Model Rule impermissably creates an unconstitutional forum for Article III matters in derogation of legislative prerogative, and the very terms of 28 U.S.C. § 1471(c) that only bank-

## CERTIFICATION OF NEED FOR IMMEDIATE REVIEW BY DISTRICT JUDGE

The Court HEREBY CERTIFIES, pursuant to Model Rule (e)(3) and the *White Motor* opinion, that the instant matters require IMMEDIATE REVIEW for resolution of the apparent inconsistencies between the Model Rule and the Supreme Court Rules in order to determine the proper procedure to be utilized for the journalizing of the above proposed judgment. The clerk of the court is ordered to transmit the files and records of the instant matters together with said findings, conclusions and proposed order to the District Court.

ruptcy judges exercise jurisdiction as "adjuncts" over the substantive law enacted by the Bankruptcy Code.